**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **RESTAURANT LAW CENTER, and NEW YORK STATE RESTAURANT ASSOCIATION,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**CITY OF NEW YORK, and LORELEI SALAS, in her official capacity as Commissioner of the NEW YORK CITY DEPARTMENT OF CONSUMER AND WORKER PROTECTION,**<br><br>**Defendants.** | **Civil Action No. _____** |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs, the Restaurant Law Center ("RLC") and the New York State Restaurant Association ("NYSRA") (collectively, "Plaintiffs"), by and through their undersigned attorneys, seek declaratory and injunctive relief against Defendants the City of New York ("City") and Lorelei Salas, in her official capacity as Commissioner of the New York City Department of Consumer and Worker Protection ("DCWP Commissioner Salas") (collectively, "Defendants"), and hereby allege as follows:

### PRELIMINARY STATEMENT

1.      Rather than pursue an established path to unionization under the National Labor Relations Act ("NLRA"), the Service Employees International Union ("SEIU") has instead chosen to end-run around federal labor standards by focusing on a different constituency: the New York City Legislature.  Through the City Legislature, the SEIU seeks to evade the NLRA, overturn the state's longstanding doctrine of at-will employment, and, instead, impose onerous procedural rules that go to the heart of collective bargaining agreements in unionized workforces.

2.      Under new laws set to take effect on July 5, 2021, the City has eliminated at-will employment—a standard in place for over 100 years—for fast-food employers affiliated with a chain of 30 locations nationwide ("Targeted Fast-Food Employers") and *only those employers*. New York City Administrative Code ("NYCC"), Title 20, Chapter 12, Subchapter 1, § 20-1201. Thus, for only a small subset of a single industry, covered employers will be prohibited from discharging or reducing at least 15 percent of an employee's hours except for "just cause" or a "bona fide economic reason." *See* NYCC, Title 20, Chapter 12, Subchapter 7, §§ 20-1271 to 1275 (collectively, "Just Cause Laws").   Except in cases of the most egregious conduct, before discharging or reducing an employee's hours by at least 15 percent, this targeted subset of employers will be required to first provide "progressive discipline" (NYCC § 20-1272), imposed only after an investigation process that can be second-guessed in court, at an administrative proceeding, or by an arbitrator into the employee's misconduct, all subject to stringent record-keeping requirements. *See id*. And if challenged in any of those forums, the law presumes that an employer's action was unlawful and places the burden on the employer to prove there was "just cause" to support the discharge or hours reduction. *Id.* § 20-1272(a)-(e). This small set of Targeted Fast-Food Employers are also prohibited from laying off any employees unless they can prove a "bona fide economic reason," *i.e.*, which is limited to "a reduction in volume of production, sales, or profit" and, even then, layoffs must be done in "reverse order of seniority." *Id.* § 20-1272(g)-(h).  In other words, layoffs are barred until the employer suffers actual economic harm, and may not be used to *avoid* that harm or to *increase* volume production, sales, or profit. *Id.*  The Just Cause Laws also allow an aggrieved employee to compel arbitration (even on a class basis) without any consent from the employer, and with its own set of forced arbitration rules in which Targeted Fast-Food Employers have no say. *Id.* § 20-1273.

3.      The Just Cause Laws—in both purpose and effect—usurp the collective bargaining process, infringe on the exclusive jurisdiction of the National Labor Relations Board ("NLRB"), compel Targeted Fast-Food Employers to implement detailed procedures without any concessions in exchange, violate the Federal Arbitration Act ("FAA"), and deny those employers their federal and state constitutional guarantees, including the right to trial by jury, the right to enter into at-will employment contracts, and the right to be free from discrimination against interstate commerce.

4.      The Just Cause Laws result from an effort—by both City councilmembers *and* representatives of the SEIU (a union with over 2 million members)—to unionize through state legislation, rather than through proper, federally endorsed methods under the NLRA.  As the Just Cause Laws' Councilmember sponsor Brad Lander put it, the Just Cause Laws are meant to achieve conditions that previously have been "available only to union members."  *See* Exhibit A, attached to Declaration of Leni D. Battaglia (excerpts of FOIL Response Part 1).  The goal of the Just Cause Laws—according to their sponsor—is to extend to some non-unionized fast-food workers "part of what a union provides."  *Id*.

5.      These goals are unsurprising, as the SEIU played a large part in drafting the laws. *See id.*, Exs. A-B (excerpts of FOIL Responses, Parts 1-2).  Throughout the legislative process, City Council staff readily incorporated edits from union attorneys and strategic campaign coordinators.  *Id.*, Exs. A-B (excerpts of FOIL Responses, Parts 1-2).  At one point, the union proposed new language on progressive discipline, and Lander approved it within hours.  *See id.*

6.      By enacting, threatening enforcement of, and enforcing the Just Cause Laws, acting under color of local law, Defendants have deprived Plaintiffs and their members of their rights under federal law *and* state law, including the United States and New York Constitutions.

7.     As an initial matter, federal labor law preempts the Just Cause Laws.  Specifically, the Laws interfere in the collective bargaining process in a subset of the fast-food industry, attempting to legislate obligations for employers that the NLRA intended to leave unregulated and the subject of bargaining.  The Just Cause Laws are also preempted by federal labor law because they create the potential for conflict with the NRLB's statutory authority.

8.     The Just Cause Laws' mandatory arbitration provisions also violate federal arbitration law and New York constitutional provisions guaranteeing the right to trial by jury and preserving the New York Supreme Court's jurisdiction.  Allowing employees to force Targeted Fast-Food Employers to submit to arbitration (even mandatory class arbitration), without consent and without involvement of New York state courts, only compounds the constitutional and federal preemption problems with these laws.

9.     The Just Cause Laws also violate New York State's longstanding common law policy of at-will employment and permitting employers and employees to decide by contract whether to require cause for termination.  That state common law preempts the Just Cause Laws' invalidation of at-will employment contracts under general New York preemption doctrine and the New York Constitution's limit on the authority of local governments.

10.     Finally, the Just Cause Laws also violate the U.S. Constitution's Dormant Commerce Clause by imposing their onerous burdens *only* on Targeted Fast-Food Employers that do business with companies that have 30 locations nationwide, and *not* on similarly situated local employers.  That scope clearly discriminates against interstate commerce, and at the very least imposes unjustifiable burdens thereon.

11.     Plaintiffs therefore respectfully request that this Court (1) declare that the Just Cause Laws impermissibly run afoul of (i) federal labor law; (ii) federal arbitration law; (iii) New

York State constitutional provisions protecting right to trial by jury, state court's jurisdiction, and state common law from contrary local provisions; and (iv) the federal Dormant Commerce Clause, and (2) enjoin the Just Cause Laws' implementation and enforcement.

## PARTIES

12.     Plaintiff Restaurant Law Center ("RLC") is a public policy organization affiliated with the National Restaurant Association, the largest foodservice trade association in the world. The RLC was created in 2015 and is headquartered at 2055 L St. NW, Suite 700, Washington, DC 20036.  In addition to representing the interests of its members in labor relations matters before the courts, the RLC provides industry-specific guidance for owners, operators, and legal operators through webinars and through its Compliance Library, including providing industry-specific COVID-19 advice and guidance.  RLC members have locations that operate within New York City that would be subject to the Just Cause Laws.  The RLC's members include "fast-food employers" that employ "fast-food employees" at a "fast-food establishment" within the definitions of the Just Cause Laws.  NYCC § 20-1201; *id.* § 20-1272.  The RLC's members are directly affected by the Just Cause Laws.

13.     Plaintiff New York State Restaurant Association ("NYSRA") is a not-for-profit employer association that represents food service establishments throughout New York State. Founded in 1935, the NYSRA is the oldest and most comprehensive professional organization for restaurant management in New York.  It provides a forum for restaurants to exchange ideas and information, participate in creative problem-solving, and receive education.  The NYRSRA has over 10,000 members representing nearly every type of dining establishment in New York State and about 1,000 of its members are located in New York City.  Many of those NYSRA members operate fast-food restaurants within New York City, with more than 30 establishments nationwide, and are therefore subject to the Just Cause Laws.

14.     Defendant City of New York is a municipality organized and existing under the laws of New York State.  It is authorized by law to create and maintain its Department of Consumer and Worker Protection ("DCWP") and is responsible for the DCWP's rules, actions, and policies.

15.     Defendant Commissioner Salas, sued here in her official capacity, is the Commissioner of the DCWP, the entity empowered to implement and enforce the Just Cause Laws, and to promulgate rules regarding procedure for arbitration proceedings brought by fast-food employees, including regarding the number of arbitrators on a panel, selecting arbitrators for specific panels, and any other rules relating to the arbitration.  NYCC §§ 20-1207, 20-1273; *see also* L.L. 2021/002 (Int. No. 1415-A, § 7).

## JURISDICTION AND VENUE

16.     This action, under both 42 U.S.C. § 1983 and this Court's power to enjoin state (or local) regulations preempted by federal law, *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 326 (2015) (citing *Ex parte Young*, 209 U.S. 123, 155-56 (1908)), seeks to prevent the City from further implementing or enforcing the Just Cause Laws due to their irreconcilable conflict with federal labor law and federal constitutional law.

17.     This Court has subject-matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343(a)(3)-(4).

18.     This Court also may exercise supplemental jurisdiction over claims arising from state law, including New York constitutional and preemption claims under 28 U.S.C. § 1367.

19.     Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202 as well as Federal Rule of Civil Procedure 57.

20.     A live, justiciable controversy exists between the parties regarding the implementation and enforcement of the Just Cause Laws.  Several of the RLC's and the NYSRA's members have begun implementing internal procedures in order to comply with the Just Cause

Laws.  These members have sought both Plaintiffs' assistance in designing strategies to attempt to comply with these burdensome laws.

21.     So too, Plaintiffs have been required to divert resources away from other core activities, including advocating for the foodservice industry, providing tools and systems to help members improve operating results, and providing access to information regarding best business practices to its members.  Plaintiffs would prefer to assist members in expanding and growing their enterprises and to promote pro-growth policies and balanced federal regulations.  And rather than assist their members on important issues such as addressing the challenges of COVID-19, Plaintiffs have had to spend time and money to counsel members regarding their rights and legal obligations regarding the Just Cause Laws, the NLRA, and the FAA as a result of these laws.  Moreover, time spent advising members on the implications of the Just Cause Laws has directly led to RLC staff and NYSRA staff diverting time from their other activities, including advising the restaurant industry regarding COVID-19 practices.   This "diver[sion of] resources from" Plaintiffs' "current activities" is "an injury that has been repeatedly held to be independently sufficient to confer" standing on Plaintiffs.  *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 111 (2d Cir. 2017); *see also Moya v. U.S. Dep't of Homeland Sec.*, 975 F.3d 120, 130 (2d Cir. 2020) (reaffirming *Centro*).

22.     Plaintiffs and their members have suffered these concrete harms, and with the Just Cause Laws' effective date in July 2021, this Court has jurisdiction to adjudicate this dispute under Article III of the U.S. Constitution.

23.     Venue is proper in this district under 28 U.S.C. § 1391(b)(1)-(2).

## FACTUAL ALLEGATIONS

**The City Enacts the Just Cause Laws to Advance Collectively Bargained Standards by Legislation Instead of Through Bargaining or Agreement.**

24.     On December 17, 2020, the New York City Council passed two bills, Int. No. 1396-A and Int. No. 1415-A (codified at NYCC §§ 20-1271 to 1275), in order to limit when certain "fast-food employers" can discharge or reduce the hours of their fast-food employees more than 15 percent.  On January 5, 2021, Mayor Bill de Blasio signed the two bills into law.  The Just Cause Laws, for the most part, take effect on July 5, 2021.  Despite a July 5, 2021 effective date, the DCWP is yet to engage in any public rulemaking, let alone issue any proposed rules and regulations.

25.     The explicit goal of the Just Cause Laws is to aid the SEIU's years-long effort to unionize this industry.  In particular, the laws require targeted chain fast-food employers to provide conditions that go to the heart of almost all collective bargaining agreements.  As City Councilmember Lander told a reporter, the goal of this law was to get fast-food workers "part of what a union provides."  Battaglia Decl., Ex. A.

26.     SEIU representatives lobbied the City to advance their unionization efforts, and the Councilmember sponsor of the Just Cause Laws responded by strategizing with those members as to how best to further those efforts.  "Strategy" emails between Lander and union representatives confirm that the "principle of 'just cause' is the keystone of the collective bargaining agreement" and it "marks a sharp dividing line between union and nonunion or at-will workers."  *Id.*  The union representatives with whom Lander strategized also assisted in drafting the Just Cause legislation.  *See id.*, Exs. A-B.  Throughout the legislative process, City Council staff readily incorporated edits from union attorneys and strategic campaign coordinators.  *Id.*, Exs. A-B.  At one point, the union proposed new language on progressive discipline, and Councilmember Lander

approved it within hours.  *Id.*, Ex. A (SEIU representative suggesting new language to "deal with [a] progressive discipline issue," which Lander approved in just over two hours).

### The Just Cause Laws Forbid At-Will Employment, And Impose Onerous Requirements and Procedures, Before Targeted Fast-Food Employers May Discharge or Reduce Hours Above a Certain Threshold.

27.     The Just Cause Laws apply only to "fast food establishments" that are part of a chain and that are one of 30 or more establishments nationally, including either an integrated enterprise, or an establishment operated pursuant to a franchise where the franchisor and the franchisees of such franchisor own or operate 30 or more such establishments in the aggregate. NYCC § 20-1301. The Just Cause Laws do not apply to fast-food employees working at establishments that are not part of a chain of 30 or more establishments nationally, even where the fast-food employees are otherwise performing the exact same job as employees of chain restaurants.  For example, a national chain with only 5 stores in the City would be subject to the Just Cause Laws, but a local New York City chain with 25 stores need not comply.

28.     Under the Just Cause Laws, a fast-food employee, defined as "any employee employed or permitted to work at or for a fast-food establishment that is located within the city, by any employer, where such job duties include at least one of the following: customer service, cooking, food or drink preparation, delivery, security, stocking supplies or equipment, cleaning or routine maintenance," shall not be discharged or have his or her hours reduced above set thresholds "except for just cause or for a bona fide economic reason."  NYCC §§ 20-1301, 20-1272.

29.     The City has decided that "'just cause' means the fast-food employee's failure to satisfactorily perform job duties or misconduct that is demonstrably and materially harmful to the fast-food employer's legitimate business interests."  NYCC § 20-1271.  The City has not provided any additional guidance or examples of what constitutes "just cause."

30.     Contrary to New York common law, which presumes that all employment relationships are "at-will," the Just Cause Laws place onerous requirements only on certain fast-food employers who would otherwise be afforded the common law protections that permit employers to discharge an employee or reduce an employee's hours at-will (with exceptions, such as unlawful discrimination)—unless the employees have bargained for something else or came to a different arrangement via contract.

31.     The Just Cause Laws require Targeted Fast-Food Employers to establish "progressive discipline" policies and provide training on those policies.  NYCC § 20-1272.  The Just Cause Laws provide no guidance on what constitutes an acceptable "progressive discipline" policy under the law, other than that it should "provide[] a graduated range of reasonable responses … from mild to severe, depending on the frequency and degree of the failure."  NYCC § 20-1271.

32.     Further, before imposing any discipline on an employee (pursuant to the employer's progressive discipline policy), a Targeted Fast-Food Employer must conduct "a fair and objective investigation into the job performance or misconduct" that can be second-guessed after the fact. NYCC § 20-1272.  The Just Cause Laws provide no guidance on what steps that investigation should include in order to be considered "fair and objective."  *Id.*

33.     These Targeted Fast-Food Employers can only terminate employees for "just cause" after utilizing their progressive discipline policy, unless the employee's misconduct is "egregious" or represents an "egregious failure by the employee to perform their duties."  *Id.*  The Just Cause Laws provide no guidance on what constitutes "egregious misconduct" or an "egregious failure by the employee to perform their duties."

34.     And even if the City eventually provides guidance that resolves issues of vagueness with the Just Cause Laws, that will not save the Just Cause Laws, which are deficient for all the reasons in this Complaint.

**The Just Cause Laws Forbid Targeted Fast-Food Employers to Layoff or Meaningfully Reduce Employee Hours Unless They Have Suffered Actual "Reduction in Volume of Production, Sales, or Profit."**

35.     If a Targeted Fast-Food Employer wants to discharge or reduce the hours of an employee by at least 15 percent because of a "bona fide economic reason," it must point to business records showing "that the closing[] or technological or reorganizational changes are in response to a reduction in volume of production, sales, or profit." *Id.* Note that a "bona fide economic reason" is irrationally limited to actual "reduction." The law prohibits certain employers from reorganizing businesses to take advantage of an opportunity to earn additional "production, sales, or profit," or even to stave off a foreseeable reduction in profit.

36.     Discharges based on bona fide economic reasons must be done in "reverse order of seniority … so that the employees with the greatest seniority shall be retained the longest." *Id.* Fast-food restaurants may not consider any other factors normally considered by employers when conducting layoffs, such as business need or employees' ability and skill.

**Fast-Food Employees Can Challenge Any Discharge or Hours Reduction in Mandatory Class-wide Arbitration Where the Targeted Fast-Food Employer Is Presumed Guilty and Has the Burden to Prove Just Cause or Bona Fide Economic Reason.**

37.     Fast-food employees can challenge their terminations or hours reductions, asking courts (or arbitrators) to second-guess the employers' reasoning, the fairness of the required progressive discipline policy, and whether any investigation was "fair and objective." In any challenge, the Targeted Fast-Food Employer *always* bears the burden of proving just cause or a bona fide economic reason by a preponderance of the evidence. *Id.*

11

38.     Fast-food employees can challenge their discharge or hours reduction by filing a complaint with the DCWP (NYCC § 20-1297), filing a civil action in a court of competent jurisdiction (NYCC § 1211), or bringing a private arbitration proceeding.  *See* NYCC § 20-1273. Fast-food employees are even permitted to bring an arbitration proceeding as a representative party on behalf of all members of a class.  *Id.*

39.     Pursuant to the Just Cause Laws, if a fast-food employee decides to proceed with arbitration, including class arbitration, Targeted Fast-Food Employers are compelled to participate, even though they have never consented to having their disputes resolved through private arbitration rather than courts.  This compulsory arbitration framework deprives Targeted Fast-Food Employers of their right to trial by jury, as protected in the New York Constitution.

40.     The DCWP determines the number of arbitrators who will sit on the panel of arbitrators from which the parties select an arbitrator for their matter.  *Id.*  The arbitrators on the panel are chosen by a committee, and that committee is established by the DCWP.  *Id.*  If that committee cannot select enough arbitrators, as determined by the DCWP, the DCWP then selects individuals to serve as arbitrators.  *Id.*  If parties to an arbitration cannot agree on the selection of an arbitrator, the DCWP selects the arbitrator for a particular arbitration.  *Id.*  In other words, the Targeted Fast-Food Employer, who did not consent to arbitration in the first place, has little say with respect to how the arbitration is conducted.

41.     If the arbitrator finds the fast-food employer violated the Just Cause Laws, the arbitrator can require the fast-food employer to pay the City for the entire cost of the arbitration proceeding.  *Id.*

42.     The Just Cause Laws impose both civil liability and administrative penalties for an employer's violations.  If a Targeted Fast-Food Employer is found to have violated the Just Cause

Laws, any adjudicator can order the employer to reinstate or restore the hours of the fast-food employee, as well as pay the employee's attorneys' fees and costs.  NYCC § 20-1272.  The DCWP can impose civil penalties and order restitution, other forms of equitable relief, or the payment of monetary damages.  NYCC § 20-2203.  A court of competent jurisdiction can order compensatory, injunctive, and declaratory relief.  NYCC § 20-1211.  An arbitrator can require an employer to reinstate or restore hours as well as other relief such as back pay, rescission of discipline, compensatory damages, and injunctive relief.  NYCC § 20-1273.

### The Just Cause Laws Impermissibly Burden Targeted Fast-Food Employers vis-à-vis Employees and Are Harming Plaintiffs and Their Members.

43.    Through the Just Cause Laws, certain fast-food employees who work for certain chain fast-food employers affiliated with 30 locations nationwide will be employed subject to restrictions typically only imposed by agreement as the result of collective bargaining between a union and the employer.  Absent negotiations and bargaining with a union, the RLC's and NYSRA's members would never have agreed to the substantive and procedural requirements included in the Just Cause Laws. Nor, it bears noting, have fast-food employees themselves selected the SEIU as their representative, such that the Just Cause Laws and legislative process has usurped *both sides* of the collective bargaining process.

44.    The RLC's and NYSRA's members have been forced to prepare to comply with the Just Cause Laws.  The members have started creating progressive discipline policies they *think* will comply with the laws, but of course cannot be certain because there is no guidance to follow. They must create extensive new policies and procedures for training, investigation, and disciplinary issues, and must hire new employees to ensure compliance with the same.  They have had to create new records and forms, as well as establish new recordkeeping procedures, as required by the Just Cause Laws.  The RLC's and NYSRA's members have already started training

their managers and employees on their rights and obligations under the new laws. Finally, they are preparing to defend against litigation and arbitration arising under the Just Cause Laws.

45. Plaintiffs also are spending significant resources hearing complaints from, and addressing the concerns of, their members regarding the Just Cause Laws. They have communicated with individual members regarding their concerns as to the Just Cause Laws' obligations, and have redirected time, staff, and legal expertise in part to assist members in navigating the potential legal and practical implications of the Just Cause Laws. These efforts have consequently slowed Plaintiffs' ability to pursue other projects, such as educational sessions on other laws and opportunities to express Plaintiffs' perspectives on other topics. Critically, these efforts have inhibited Plaintiffs' other efforts, including guiding their members through the COVID-19 pandemic. Plaintiffs are not able to dedicate the time they want to providing advice to their members about maintaining operations in the face of reduced sales, navigating the legal requirements imposed on essential businesses and restaurants during the pandemic, and even providing practical guidance as New York City starts to "re-open," and vaccines are now widely available. In short, Plaintiffs have limited resources, portions of which have reluctantly been spent educating members about the Just Cause Laws.

## COUNT ONE
### (National Labor Relations Act Preemption)

46. Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 45 of this complaint, as though fully set forth below.

47. The Supremacy Clause of the U.S. Constitution states that the "Laws of the United States … shall be the supreme Law of the Land." U.S. CONST. art. VI. Federal courts have long recognized a cause of action in equity to prohibit the enforcement of state and local law that runs afoul of the Supremacy Clause. *See Friends of the E. Hampton Airport, Inc. v. Town of E.*

*Hampton*, 841 F.3d 133, 144 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 2295 (2017); *see also* 42 U.S.C. § 1983; *Ex parte Young*, 209 U.S. 123, 155-63 (1908).

48.     The NLRA preempts state and local laws that interfere in aspects of the labor-management relationship that Congress intended to be left unregulated, leaving such arrangements to negotiations and the free play of economic forces, under the doctrine of *Machinists* preemption. *Lodge 76, Int'l Ass'n of Machinists & Aerospace Workers v. Wis. Emp. Rels. Comm'n*, 427 U.S. 132, 140 (1976).

49.     The Just Cause Laws interfere in labor-management relations and the collective bargaining process by imposing on Targeted Fast-Food Employers requirements that would not occur without the existence of a union and a collective bargaining agreement.

50.     The elaborate disciplinary process and procedures for hours reductions, terminations, and layoffs imposed upon employers self-evidently gives "workers the equivalent of the kind of benefit that unions typically seek."  Kimiko de Freytas-Tamura, *'No One Should Get Fired on a Whim': Fast Food Workers Win More Job Security*, N.Y. TIMES (Dec. 17, 2020), https://www.nytimes.com/2020/12/17/nyregion/nyc-fast-food-workers-job-security.html.

51.     FOIL responses make clear that the explicit goal of the Just Cause Laws' sponsor was to provide what a union provides and create a fast-food industry union, or at the very least impose collective bargaining agreement terms on Targeted Fast-Food Employers without their agreement.  *See* Battaglia Decl., Ex. A.

52.     In practice, the law affects union and non-union employees differently, imposing obligations that go to the heart of collectively bargained contracts without requiring any agreement or negotiation process and/or without the judicially-recognized *quid pro quo* of a binding arbitration system in connection with a corresponding no strike / no work stoppage protection.

53.     The Just Cause Laws illustrate precisely the kind of local interference in labor-management relations that *Machinists* preemption forbids.

54.     The NLRA also preempts state regulation of conduct that is "arguably within the compass of" the NLRA.  *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 246 (1959) (discussing "*Garmon*" preemption).

55.     The Just Cause Laws trigger *Garmon* preemption because they give the City the authority to determine whether the "just cause" standard has been met—without providing any specific conduct that is prohibited—thus conflicting with the NLRB's authority under NLRA § 10(c) to decide whether an individual has been "suspended or discharged for cause."

56.     The City's ability to determine whether a fast-food employee has been "discharged for [just] cause" will infringe upon a statutory issue covered by the NLRA, and thus the NLRB's "exclusive competence" to determine such issues.  *Garmon*, 359 U.S. at 246.

## <u>COUNT TWO</u>
**(Federal Arbitration Act and New York Constitutional Challenge to Arbitration Provision)**

57.     Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 56 of this complaint, as though fully set forth below.

58.     The Just Cause Laws impermissibly permit employees to force Targeted Fast-Food Employers to participate in mandatory, binding arbitration—and may even bind employers to class arbitration—all without the employer's consent.

59.     As an initial matter, this framework violates the FAA, 9 U.S.C. §§ 1 *et seq.*—including that "arbitration 'is a matter of consent, not coercion.'"  *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1415 (2019) (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010)).

60.     It also is preempted under *AT&T Technologies v. Communications Workers*, 475 U.S. 643 (1986), which relied on the *Steelworkers Trilogy* (*Steelworkers v. American Manufacturing Co.*, 363 U.S. 564 (1960); *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960); and *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S 593 (1960)) for the proposition that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T*, 475 U.S. at 648.

61.     This compulsory arbitration framework also violates the right to trial by jury protected in the New York Constitution.  N.Y. CONST. art. I, § 2 ("Trial by jury in all cases in which it has heretofore been guaranteed by constitutional provision shall remain inviolate forever.").

62.     Because the laws provide for compensatory damages, a claim would sound at law and employers would be entitled to a trial by jury, an entitlement plainly contravened by the mandatory arbitration provision.  *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State*, 550 N.E.2d 919, 922 (N.Y. 1990).

63.     The arbitration provision also impermissibly diminishes the jurisdiction of the New York Supreme Court by allowing these disputes to be heard by private arbitrators rather than in court.  *See* N.Y. CONST. art. VI, § 7(a) ("The supreme court shall have general original jurisdiction in law and equity.").

64.     Unlike the New York State Legislature, local governments have no power to alter the jurisdiction of the courts.  *See Stoffer v. Dep't of Pub. Safety of Town of Huntington*, 77 A.D.3d 305, 316, 907 N.Y.S.2d 38, 45 (2010) (citing N.Y. CONST. art. IX, § 3(a)(2)).

65.     Thus, the arbitration provision here violates the New York Constitution by depriving Targeted Fast-Food Employers of their jury trial rights and by purporting to diminish the New York Supreme Court's power.

## COUNT THREE
### (New York State Law Preemption)

66.     Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 65 of this complaint, as though fully set forth below.

67.     New York common law presumes that all employment relationships are "at-will"— *i.e.*, terminable at any time by employer or employee.

68.     The only limits on an employer's right to terminate an employee at will "under New York law as it now stands" are "a constitutionally impermissible purpose, a statutory proscription, or an express limitation in the individual contract of employment."  *Horn v. N.Y. Times*, 100 N.Y.2d 85, 92, 790 N.E.2d 753, 756 (2003) (quoting *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 304-05 (1983)).

69.     The Just Cause Laws contravene this common law standard by impairing at-will employment absent an express agreement or a statewide statutory proscription—and are thus impermissible under two theories.

70.     First, New York courts employ a preemption doctrine similar to federal preemption, in which local laws are preempted if they conflict with statewide laws or venture into a field occupied by a statewide regime.  *Mayor of City of New York v. Council of City of New York*, 4 Misc. 3d 151, 159, 780 N.Y.S.2d 266, 273 (Sup. Ct. 2004).

71.     Just as "federal common law preempts state law," *City of New York v. Chevron Corp.*, No. 18-2188, 2021 WL 1216541, at *9 (2d Cir. Apr. 1, 2021), state common law favoring at-will employment preempts local laws forbidding at-will employment.

72.     Second, the New York Constitution, Article IX, § 2(c), establishes municipal home rule in New York but expressly removes the ability of local governments to adopt laws that are "inconsistent with the provisions of this constitution or any general law."

73.     Here, New York common law favoring at-will employment is a "general law" because it, "in terms and in effect[,] applies alike to all … villages."  N.Y. CONST., art. IX § 3(d).

74.     Local laws are impermissibly inconsistent with state laws if they impose additional restrictions over and above state restrictions in a way that inhibits the purposes of the state law. *See, e.g.*, *Wholesale Laundry Bd. of Trade, Inc. v. City of New York*, 17 A.D.2d 327, 330, 234 N.Y.S.2d 862 (1st Dept. 1962), *aff'd*, 12 N.Y.2d 998, 239 N.Y.S.2d 128, 189 N.E.2d 623 (1963) (local law increasing minimum wage forbidden).

75.     The Just Cause Laws forbid Targeted Fast-Food Employers from entering or enforcing at-will employment contracts and are thus preempted and inconsistent with state common law and beyond New York City's authority.

## COUNT FOUR
### (Dormant Commerce Clause Challenge)

76.     Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 75 of this complaint, as though fully set forth below.

77.     The Just Cause Laws violate the Dormant Commerce Clause of the U.S. Constitution by "discriminat[ing] against interstate commerce" and "impos[ing] a burden on interstate commerce that is not justified by any benefits it creates."  *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 94 (2d Cir. 2009).

78.     Local economic "protectionism" is counter to the constitutional design, *id.*, yet the Just Cause Laws discriminate against interstate commerce by placing onerous requirements only

on local fast-food restaurants doing business with out-of-state or national companies—*i.e.*, "chain[s]" that have "30 or more establishments nationally."  NYCC § 20-1201.

79.     The prohibitions on discharge and layoffs—even when doing so would be profitable for the restaurant—are extremely burdensome and put covered restaurants at a competitive disadvantage vis-à-vis restaurants who do not do business with national chains.

80.     In addition to discriminating against interstate commerce, the Just Cause Laws also fail the *Pike* test, since the "burden imposed on interstate commerce is clearly excessive in relation to the putative local benefits."  *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).

81.     The Just Cause Laws place burdens on Targeted Fast-Food Employers doing business with 30 locations nationally *and not* fast-food employers doing business with fewer stores; that cutoff is irrational and underinclusive, as it supposedly seeks to protect the job security of essential workers in the fast-food industry, but exempts fast-food employees in the exact same position as their chain counterparts job-security-wise.

82.     That exemption is not related to the "putative local purpose sought to be advanced" (*i.e.*, protecting essential workers from termination without just cause), and thus the burdens on interstate commerce exceed the local benefits.  *Brown & Williamson Tobacco Corp. v. Pataki*, 320 F.3d 200, 209 (2d Cir. 2003).

83.     The Just Cause Laws discriminate against and burden interstate commerce in a way that violates the Dormant Commerce Clause.

## COSTS AND ATTORNEYS' FEES

84.     Pursuant to 42 U.S.C. § 1988, Plaintiffs seek an award of their costs, including reasonable attorneys' fees, incurred in the litigation of this case.

## REQUEST FOR RELIEF

85.     Plaintiffs pray that this Court enters a judgment declaring that the Just Cause Laws: (1) are preempted by the NLRA under the *Machinists* doctrine because they interfere in labor-management relations and the collective bargaining process; (2) are preempted by the NLRA under *Garmon* because they usurp the NRLB's authority; (3) violate the FAA, defendants' right to trial by jury, and the New York Supreme Court's jurisdiction over cases and controversies by imposing mandatory arbitration; (4) are inconsistent with and preempted by New York State's common law policy in favor of at-will employment absent an explicit agreement among the parties intending a limitation on terminations; and (5) violates the Dormant Commerce Clause's prohibition on discrimination against or impermissibly burdening interstate commerce.

86.     Plaintiffs pray for an injunction prohibiting the City, the Commissioner, and their agents from implementing the Just Cause Laws and enforcing them against Plaintiffs' members and affiliates.

87.     Plaintiffs pray for such additional or different relief as the Court deems just and proper, including an award of reasonable attorneys' fees and the costs of this action.

Dated: May 28, 2021                      Respectfully submitted,

                                         */s/ Leni D. Battaglia*

                                         Leni D. Battaglia
                                         Morgan, Lewis & Bockius LLP
                                         101 Park Avenue
                                         New York, NY  10178
                                         T: 212-309-7177
                                         leni.battaglia@morganlewis.com

                                         William R. Peterson
                                         *application to appear pro hac vice forthcoming
                                         Morgan, Lewis & Bockius LLP
                                         1000 Louisiana Street, Suite 4000
                                         Houston, TX  77002
                                         T: 713-890-5188
                                         william.peterson@morganlewis.com

                                         James D. Nelson
                                         *application to appear pro hac vice forthcoming
                                         Morgan, Lewis & Bockius LLP
                                         1111 Pennsylvania Avenue, NW
                                         Washington, DC  20004
                                         T: 202-739-5411
                                         james.nelson@morganlewis.com

                                         Angelo I. Amador
                                         *application to appear pro hac vice forthcoming
                                         Restaurant Law Center
                                         2055 L Street, NW
                                         Seventh Floor
                                         Washington, DC  20036
                                         T: 202-492-5037
                                         aamador@restaurant.org