UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------- X

RESTAURANT LAW CENTER, and NEW YORK
STATE RESTAURANT ASSOCIATION,

        Plaintiffs,

   -against-

CITY OF NEW YORK, and LORELEI SALAS, in her
official capacity as Commissioner of the NEW YORK
CITY DEPARTMENT OF CONSUMER AND
WORKER PROTECTION

        Defendants.

----------------------------------------------------------------- X

Case No. 1:21-cv-04801-DLC

## BRIEF OF *AMICI CURIAE* PROFESSORS OF LABOR LAW

**COHEN WEISS & SIMON LLP**
**Hanan B. Kolko**
**900 Third Ave, Suite 2100**
**New York, NY 10022-4869**
**Tel:  212.356.0214**
**Fax: 646.473.8214**
**HKolko@cwsny.com**
*Attorneys for Amici Curiae Professors of Labor Law*

**Professor Kate Andrias**
**Columbia Law School**
**Jerome Greene Hall, Room 545**
**435 West 116th Street**
**New York, NY 10027**
**Tel:  212.854.4585**
*Amicus Curiae Professor of Labor Law*

9722382.4

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ ii

STATEMENT OF INTEREST OF *AMICI* ................................................................... 1

PRELIMINARY STATEMENT ................................................................................... 1

ARGUMENT ................................................................................................................. 1

I.     The Just Cause Laws Are Not Preempted by the NLRA .................................... 1

     A.    Statutory Protections on Termination Qualify as Minimum Labor Standards and Are Not Preempted Under Machinists. ........................................... 3

     B.    Minimum Labor Standards that Target Specific Geographies or Industries Are Not Preempted Under Machinists. .................................................. 8

     C.    Labor Union Support for the Just Cause Laws Does Not Render Them Preempted Under Machinists. .................................................................. 9

II.    The Just Cause Laws Are Consistent with a Wide Array of Existing Limitations on Employment-at-Will .............................................................................. 11

III.   Plaintiffs' Dormant Commerce Clause Arguments Are Meritless and Represent an Effort to Return to Lochner-Era Labor Relations ............................................ 17

     A.    The Just Cause Laws Do Not Affirmatively Discriminate Against or Impose a Judicially Cognizable Burden on Interstate Commerce. ....................... 18

     B.    Plaintiffs' Dormant Commerce Clause Arguments Represent an Effort to Reinvigorate Discredited Lochner-Era Approaches to Workplace Law. ............ 22

CONCLUSION ............................................................................................................. 25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*520 South Michigan Avenue Associates v. Shannon*,
   549 F.3d 1119 (7th Cir. 2008) .......................................................................7, 8, 10

*Adkins v. Children's Hosp.*,
   261 U.S. 525 (1923)...........................................................................................23

*Alcantara v. Allied Props., LLC*,
   334 F. Supp. 2d 336 (E.D.N.Y. 2004) .................................................................6

*Armour v. City of Indianapolis*,
   566 U.S. 673 (2012)...........................................................................................24

*Ass'n of Car Wash Owners, Inc. v. City of New York*,
   911 F.3d 74 (2d Cir. 2018).............................................................................4, 11

*Associated Builders & Contractors v. Nunn*,
   356 F.3d 979 (9th Cir. 2004) ...............................................................................8

*Barnes v. Stone Container Corp.*,
   942 F.2d 689 (9th Cir. 1991) ..........................................................................7, 14

*Bassette v. Stone Container Corp.*,
   25 F. 3d 757 (9th Cir. 1994) ...........................................................................7, 14

*Bassette v. Stone Container Corp.*,
   No. CV 89-33-M-CCL, 1992 WL 613289 (D. Mont. Oct. 9, 1992) .......................7

*Bldg. Indus. Elec. Contractors Ass'n v. City of New York*,
   678 F.3d 184 (2d Cir. 2012)...............................................................................10

*Brown & Williamson Tobacco Corp. v. Pataki*,
   320 F.3d 200 (2d Cir. 2003)...........................................................................20, 21

*Cachia v. Islamorada*,
   542 F.3d 839 (11th Cir. 2008) ........................................................................18, 19

*Chamber of Commerce v. Bragdon*,
   64 F.3d 497 (9th Cir.1995) ...............................................................................7, 8

*Concerned Home Care Providers, Inc. v. Cuomo*,
   783 F.3d 77 (2d Cir. 2015)............................................................................. *passim*

*Danny v. Laidlaw Transit Servs., Inc.*,
    193 P.3d 128 (Wash. 2008)..................................................................13

*E.I. DuPont de Nemours & Co. v. Pressman*,
    679 A.2d 436 (Del. 1996) ....................................................................14

*Eastex, Inc. v. NLRB*,
    437 U.S. 556 (1978)..............................................................................9

*Wine & Spirits Retailers, Inc. v. Rhode Island*,
    481 F.3d 1 (1st Cir. 2007), *cert. denied*, 552 U.S. 889 (2007) .........19, 20

*Foley v. Interactive Data Corp.*,
    765 P.2d 373 (Cal. 1988) ....................................................................13

*Fort Halifax Packing Company v. Coyne*,
    482 U.S. 1 (1987)......................................................................4, 5, 6, 11

*Gen. Dynamics v. Super. Ct.*,
    876 P.2d 487 (Cal. 1994) ....................................................................13

*Golden State Transit Corp. v. City of Los Angeles*,
    475 U.S. 608 (1986)..........................................................................2, 3

*Grand River Enters. Six Nations, Ltd. v. Boughton*,
    988 F.3d 114 (2d Cir. 2021)...............................................................20

*Grand River Enters. Six Nations, Ltd. v. Pryor*,
    425 F.3d 158 (2d Cir. 2005)...........................................................18, 21

*Hunt v. Wash. State Apple Advert. Comm'n*,
    432 U.S. 333 (1977)......................................................................18, 19, 20

*Int'l Franchise Ass'n, Inc. v. City of Seattle*,
    803 F.3d 389 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 1838 (2016).......................20

*Livadas v. Bradshaw*,
    512 U.S. 107 (1994)............................................................................24

*Lodge 76, Int'l Ass'n of Machinists v. Wis. Emp. Rel. Comm'n*,
    427 U.S. 132 (1976) (*Machinists*)............................................. *passim*

*Maine v. Taylor*,
    477 U.S. 131 (1986)............................................................................17

*McIlravy v. Kerr-McGee Coal Corp.*,
    119 F.3d 876 (10th Cir. 1997) ............................................................13

*Metro. Life Ins. Co. v. Massachusetts,*
   471 U.S. 724 (1985)................................................................................2, 3, 4, 5

*Minnesota v. Clover Leaf Creamery Co.,*
   449 U.S. 456 (1981)..........................................................................................20

*Murphy v. Am. Home Prods. Corp.,*
   448 N.E.2d 86 (N.Y. 1983)..............................................................................15

*N. Ill. Chapter of Associated Builders & Contractors, Inc. v. Lavin,*
   431 F.3d 1004 (7th Cir. 2005) .........................................................................10

*Nat'l Elec. Mfrs. Ass'n v. Sorrell,*
   272 F.3d 104 (2d Cir. 2001)........................................................................17, 23

*NLRB v. Jones & Laughlin Steel Corp.,*
   301 U.S. 1 (1937)..............................................................................................23

*Phipps v. Clark Oil & Refining Corp.,*
   396 N.W.2d 588 (Minn. 1986)..........................................................................13

*Pike v. Bruce Church, Inc.,*
   397 U.S. 137 (1970).............................................................................17, 20, 21

*Rest. L. Ctr. v. City of New York,*
   360 F. Supp. 3d 192 (S.D.N.Y. 2019)...............................................................10

*R.I. Hosp. Ass'n v. City of Providence ex rel. Lombardi,*
   667 F.3d 17 (1st Cir. 2011).........................................................................6, 7, 8, 14

*Rondout Elec., Inc. v. N.Y.S Dep't of Labor,*
   335 F.3d 162 (2d Cir. 2003)................................................................................3

*Sensational Smiles, LLC v. Mullen,*
   793 F.3d 281 (2d. Cir. 2015).............................................................................24

*St. Thomas–St. John Hotel & Tourism Ass'n v. U.S. Virgin Islands,*
   218 F.3d 232 (3d Cir. 2000)..................................................................5, 6, 14, 24

*Swindol v. Aurora Flight Scis. Corp.,*
   194 So.3d 847 (Miss. 2016)..............................................................................13

*Toussaint v. Blue Cross & Blue Shield of Michigan,*
   292 N.W.2d 880 (Mich. 1980)..........................................................................13

*Town of Southhold v. Town of East Hampton,*
   477 F.3d 38 (2d Cir. 2007)...............................................................................19

*USA Recycling, Inc. v. Town of Babylon*,
66 F.3d 1272 (2d Cir. 1995)............................................................................22

*W. Coast Hotel Co. v. Parrish*,
300 U.S. 379 (1937)......................................................................................23

*W. Lynn Creamery, Inc. v. Healy*,
512 U.S. 186 (1994)......................................................................................17

*Wal-Mart Stores, Inc. v. City of Turlock*,
483 F. Supp. 2d 987 (E.D. Cal. 2006)..............................................................20

*Washington Serv. Contractors Coal. v. District of Columbia*,
54 F.3d 811 (D.C. Cir. 1995)............................................................................6

*Weiner v. McGraw-Hill, Inc.*,
443 N.E.2d 441 (N.Y. 1982)............................................................................13

*Williamson v. Lee Optical of Oklahoma Inc.*,
348 U.S. 483 (1955)......................................................................................23

**Statutes**

29 U.S.C. §§ 151-69 ........................................................................................1

29 U.S.C. § 623(a) ..........................................................................................13

33 U.S.C. § 1367(a) ........................................................................................13

38 U.S.C. § 4311 ............................................................................................13

42 U.S.C. § 2000e-2 ........................................................................................12

42 U.S.C. § 12112(a)-(b) ..................................................................................13

Fair Labor Standards Act of 1938, 29 U.S.C. § 215(a)(3).....................................13

Mont. Code Ann. § 39-2-904 ............................................................................14

N.Y. Civ. Serv. Law § 75..................................................................................15

N.Y. Exec. Law § 290, *et seq.* ..........................................................................13

N.Y. Exec. Law § 296(a) ..................................................................................16

N.Y. Lab. Law § 201-D ....................................................................................16

N.Y. Lab. Law § 215 ..................................................................................13, 16

N.Y.C. Admin. Code § 8-107 ...................................................................................16

N.Y.C. Admin. Code § 20-918 .................................................................................16

N.Y.C. Admin. Code § 20-1204 ...............................................................................16

N.Y.C. Admin. Code §§ 20-1271–1275 ....................................................................1

N.Y.C. Admin. Code § 22–505....................................................................................16

National Labor Relations Act, 29 U.S.C. § 158(a)(4) ..............................................13

Occupational Safety and Health Act of 1970, 29 U.S.C. § 660(c) ...........................13

P.R. Laws. Ann. tit. 29, §§ 185a‑185m ....................................................................14

Phila. Code §§ 9-4700-9-4710..................................................................................14

V.I. Code Ann. tit. 24, §§ 76-79 ...............................................................................14

**Other Authorities**

Barry Friedman, *The Will of the People* 225-36 (2009) ............................................23

Ctr. for Popular Democracy, *Fired on a Whim: The Precarious Existence of NYC Fast-food Workers* 1 (Feb. 2019), https://s27147.pcdn.co/wp-content/uploads/Just-Cause-February-2019.pdf ...........................................24

Charles J. Muhl, *The Employment-At-Will Doctrine*, BLS Monthly Lab. Rev. 3-4 (Jan. 2001)....................................................................................................13

Cynthia L. Estlund, *Wrongful Discharge Protections in an At-Will World,* 74 Tex. L. Rev. 1655, 1657-62 (1996).......................................................................12

Kate Andrias & Alexander Hertel-Fernandez, *Ending At-Will Employment*, Roosevelt Instit. 7-8 (Jan. 2021), https://rooseveltinstitute.org/wp-content/uploads/2021/01/RI_AtWill_Report_202101.pdf......................................12

Sandra F. Sperino, *Revitalizing State Employment Discrimination Law*, Geo. Mason L. Rev. 545, 557 (2013) ...............................................................13

Jamal Greene, *The Anticanon*, 125 Harv. L. Rev. 379, 417-422 (2011) .......................................23

Press Release, *NYC Council Passes Landmark Legislation for Fair Work Week and Better Jobs for Fast-Food, Retail Workers*, SEIU 32BJ (May 25, 2017), https://www.seiu32bj.org/press-release/nyc-council-passes-landmark-legislation-for-fair-work-week-better-jobs-for-fast-food-retail-workers/.................................10

Robert C. Bird, *Rethinking Wrongful Discharge: A Continuum Approach*, 73 U. Cin. L. Rev. 517, 530 (2004) ...................................................................15

Samuel Estreicher & Jeffrey M. Hirsch, *Comparative Wrongful Dismissal Law: Reassessing American Exceptionalism*, 92 N.C. L. Rev. 343, 357, 370, 395, 434 (2014)......................................................................................................11

Samuel R. Bagenstos, *Consent, Coercion, and Employment Law*, 55 Harv. C.R.-C.L. L. Rev. 409, 410 (2020)..........................................................................22

Steven Greenhouse, *Firing Workers on the Boss's Whim? New York Puts a Stop to That*, The American Prospect (Dec. 24, 2020), https://prospect.org/labor/firing-workers-on-the-boss-whim-new-york-just-cause-law/ .............................................................................................................21

Stewart J. Schwab & Randall S. Thomas, *An Empirical Analysis of CEO Employment Contracts: What do Top Executives Bargain For?*, 63 Wash. & Lee L. Rev. 231, 246-52 (2006)...............................................................................15

William B. Gould, et al, *To Strike a New Balance: A Report of the Ad Hoc Committee on Termination at Will and Wrongful Discharge*, Lab. & Emp. L. News, Feb. 8, 1984, at 2, https://law.stanford.edu/wp-content/uploads/sites/default/files/publication/259017/doc/slspublic/ ....................................12

William B. Gould, *The Idea of the Job as Property in Contemporary America: The Legal and Collective Bargaining Framework*, 1986 B.Y.U. L. Rev. 885, 896 (1986)..........................................................................................................15

William E. Forbath, *The Shaping of the American Labor Movement*, 102 Harv. L. Rev. 1109, 1148-1178 (1989) ........................................................................22

Yannett Lathrop, *Impact of the Fight for $15*, Nat'l Emp. L. Project (Nov. 29, 2018), https://www.nelp.org/publication/impact-fight-for-15-2018............................................9

## STATEMENT OF INTEREST OF *AMICI*

*Amici* are leading professors of labor and employment law who have written and lectured extensively about workplace law, including the extent to which the National Labor Relations Act ("NLRA" or "Act"), 29 U.S.C. §§ 151-69, preempts local and state statutes, the history and development of employment and labor protections in the U.S. and elsewhere, and constitutional restrictions on employment and labor law.  *Amici* speak only to the preemption issue under the NLRA and constitutional challenge under the Dormant Commerce Clause in this case.  A complete list of the individual *amici* is attached as Appendix A.

## PRELIMINARY STATEMENT

In the wake of the COVID-19 pandemic, when workers' fears of unjust termination often prevented them from speaking up at work, New York City enacted "Just Cause Legislation" for fast food workers (or the "Just Cause Laws,"), N.Y.C. Admin. Code §§ 20-1271–1275.  The Just Cause Laws protect a vulnerable group of workers from being dismissed or having their hours reduced without just cause or a bona fide economic reason.  In this brief, *amici* explain why the Just Cause Laws are not preempted by the NLRA; demonstrate that limitations on at-will employment are pervasive throughout New York and the U.S. and exist in nearly all of the world's industrial democracies; and explain that the Just Cause Laws do not violate the Dormant Commerce Clause of the U.S. Constitution.  Plaintiffs' arguments to the contrary represent an effort to resuscitate long-rejected *Lochner* era doctrines limiting the democratic power of legislatures to protect workers' rights.

## ARGUMENT

## I.   THE JUST CAUSE LAWS ARE NOT PREEMPTED BY THE NLRA

The NLRA establishes a national regulatory scheme for collective bargaining among private sector employees, their unions, and employers.  Section 7 of the Act provides

employees the right to engage in, or refrain from engaging in, concerted activity for the purpose

of collective bargaining or other mutual aid and protection.  Section 8 of the Act outlines a series

of specific prohibitions protecting those rights from employer and union restraint.

While the NLRA includes no express preemption clause, the Supreme Court has

developed two federal labor law preemption doctrines.  *Machinists* preemption prevents states

from intruding upon the labor-management bargaining process by regulating conduct by an

employer or union that Congress intended "to be controlled by the free play of economic forces."

*Lodge 76, Int'l Ass'n of Machinists v. Wis. Emp. Rel. Comm'n,* 427 U.S. 132, 140 (1976)

(*Machinists*) (quoting *NLRB v. Nash-Finch Co.*, 404 U.S. 138, 144 (1971)).  *Garmon* preemption

prohibits state regulation of "activity that the NLRA protects, prohibits, or arguably protects or

prohibits" to prevent state interference with the NLRB's interpretation and enforcement of

federal labor law.  *Golden State Transit Corp. v. City of Los Angeles,* 475 U.S. 608, 613 (1986)

(quoting *Wis. Dep't of Indus. v. Gould Inc.,* 475 U.S. 282, 286 (1986).

As the Plaintiffs implicitly recognize, *Garmon* is inapplicable here.  But, contrary

to Plaintiffs' assertions, *Machinists* also does not preempt the Just Cause laws, for as the

Supreme Court has repeatedly made clear, *Machinists* does not remove state and local

governments' "broad authority . . . to regulate the employment relationship to protect workers."

*Metro. Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 756 (1985) (quoting *DeCanas v Bica,* 424

U.S. 351, 356 (1976)); *see also Concerned Home Care Providers, Inc. v. Cuomo,* 783 F.3d 77,

85 (2d Cir. 2015).  Because NYC's Just Cause Laws simply set minimum labor standards and do

not interfere with the regulatory scheme established by the NLRA, they are not preempted.

A.      **Statutory Protections on Termination Qualify as Minimum Labor Standards and Are Not Preempted Under Machinists.**

In *Machinists*, the Supreme Court explained that state laws penalizing activity neither protected nor prohibited under the NLRA are preempted if they regulate conduct that Congress "left 'to be controlled by the free play of economic forces.'" *Machinists,* 427 U.S. at 140 (quoting *Nash-Finch Co.,* 404 U.S. at 144).  The Court determined that by including specific prohibitions on the use of certain economic weapons in the NLRA, Congress intended to leave other self-help tactics by unions and employers unregulated as part of the "balance struck by Congress[.]" *Id.* at 141-151 (quoting *Garner v. Teamsters Union,* 346 U.S. 485, 500 (1953)). Accordingly, the Court held that a state could not prohibit unionized employees' refusal to work overtime to gain leverage during the bargaining process. *Id.* at 154-55.

*Machinists* preemption focuses on union organizing and collective bargaining. The Second Circuit has explained that "state action is only preempted if it regulates the use of economic weapons that are recognized and protected under the NLRA such that the state or local government has entered 'into the substantive aspects of the bargaining process to an extent Congress has not countenanced.'" *Rondout Elec., Inc. v. N.Y.S Dep't of Labor,* 335 F.3d 162, 167 (2d Cir. 2003) (quoting *Machinists*, 427 U.S. at 149); *see also Golden State Transit Corp. v. City of Los Angeles*, 475 U.S. 608 (1986) (*Golden State I*) (holding that Los Angeles was preempted from conditioning a franchise renewal on the settlement of a labor dispute because this limited an economic weapon and interfered with the bargaining process).

But while the Court closely guards the organizing and collective bargaining processes, it has repeatedly made clear that states may enact laws that impose substantive employment protections.  That is so even though substantive employment protections frequently provide a floor for bargaining.  In *Metropolitan Life Insurance Company v. Massachusetts,* 471

U.S. 724 (1985), the Court rejected a *Machinists* preemption claim and upheld a state law requiring employers to provide certain mental health benefits in health insurance plans, even if the plans resulted from collective bargaining.  The Court explained that Congress developed the NLRA amidst the backdrop of state police powers granting states "broad authority . . . to regulate the employment relationship to protect workers."  *Id.* at 756 (quoting *DeCanas,* 424 U.S. at 356).  As the Second Circuit emphasized, the NLRA's protections are concerned with creating "an equitable *process* for determining terms and conditions of employment" and do not extend to the "particular *substantive terms* of the bargain that is struck."  *Cuomo,* 783 F.3d at 85 (quoting *Metro. Life*, 471 U.S. at 753).

The Supreme Court reiterated that minimum employment standards do not trigger *Machinists* preemption in *Fort Halifax Packing Company v. Coyne*, 482 U.S. 1 (1987).  There, the Court upheld a state statute mandating severance payments to employees if their plant closed. The majority emphasized that states may regulate employment conditions that would otherwise be bargaining subjects because "[b]oth employers and employees come to the bargaining table with rights under state law that form a 'backdrop' for their negotiations."  *Id.* at 21 (quoting *Metro. Life*, 471 U.S. at 757).  "Thus, the mere fact that a state statute pertains to matters over which the parties are free to bargain cannot support a claim of pre-emption, for 'there is nothing in the NLRA . . . which expressly forecloses all state regulatory power with respect to those issues . . . that may be the subject of collective bargaining.'"  *Id.* at 21-22 (alterations in original) (quoting *Malone v. White Motor Corp.*, 435 U.S. 497, 504-505 (1978)).  Respecting the traditional role that states have played in establishing labor standards, the Court also noted that "pre-emption should not be lightly inferred in this area."  *Id.* at 21; *see also Ass'n of Car Wash Owners, Inc. v. City of New York,* 911 F.3d 74, 82 (2d Cir. 2018); *Cuomo,* 783 F.3d at 85.

Plaintiffs argue that local employment regulations are preempted when they statutorily impose obligations that workers would otherwise have to bargain for in a collective bargaining agreement.  Compl. ¶¶ 49, 52; Pls.' Summ. J. Mem. 8-9.  According to Plaintiffs, it is unfair to give employees a benefit that they otherwise would be required to bargain for or that they already have bargained for, potentially giving up the right to strike as part of that bargain.  Pls.' Summ. J. Mot. 13-14.  This argument is directly contrary to binding precedent on permissible minimum labor standards under *Machinists*.  The Supreme Court and the Second Circuit have repeatedly held that states are permitted to set minimum labor standards covering potential bargaining topics without running afoul of the NLRA.  *Metro. Life Ins. Co.*, 471 U.S. at 753-58 (health care coverage); *Fort Halifax*, 482 U.S. at 20-21 (severance pay); *Cuomo*, 783 F.3d at 87 (compensation).  Just cause protections are no different: any future contract negotiations between parties covered by the Just Cause Laws simply occur against a state law backdrop establishing termination rights for employees.

Accordingly, the Third Circuit has rejected an NLRA preemption challenge to statutory just cause protection, instead finding that the statute established a permissible minimum labor standard.  *St. Thomas–St. John Hotel & Tourism Ass'n v. U.S. Virgin Islands*, 218 F.3d 232, 243 (3d Cir. 2000).[1]  There, the Virgin Islands enacted the Wrongful Discharge Act, which enumerated limited circumstances under which employers could lawfully discharge their employees.  *Id.* at 235-36.  Employees fired in violation of the WDA could file an administrative complaint for reinstatement and back pay and additionally file a civil suit for compensatory and punitive damages.  *Id.* at 236.  The court found "no principled basis for distinguishing the WDA"

---

[1] For the purposes of NLRA preemption, the court treated the Virgin Islands identically to a U.S. state.  *Id.* at 238 n.1.

from the employment protections upheld in *Metropolitan Life* or *Fort Halifax*, because Congress "did not intend to prevent states from establishing minimum substantive requirements for contract terms." *Id.* at 243.

Similarly, in *Rhode Island Hospitality Association v. City of Providence ex rel. Lombardi,* 667 F.3d 17 (1st Cir. 2011), the First Circuit rejected a preemption challenge to a city ordinance imposing a just cause condition on certain hospitality industry discharges. There, a city ordinance provided that when ownership of a hotel changed, the new employer would be required to retain certain employees for at least three months but kept the right to discharge employees "for good cause." *Id.* at 23–24. The court explained that there were no legally relevant distinctions for the preemption analysis between the city ordinance and permissible labor standards in *Metropolitan Life* and *Fort Halifax.* *Id.* at 33; *see also Washington Serv. Contractors Coal. v. District of Columbia*, 54 F.3d 811, 816–18 (D.C. Cir. 1995) (rejecting *Machinists* preemption challenge to District of Columbia worker retention ordinance); *Alcantara v. Allied Props., LLC*, 334 F. Supp. 2d 336, 344–45 (E.D.N.Y. 2004) (finding New York City worker retention ordinance not preempted under *Machinists*). It also held that the limitations on discharging employees did not render the ordinance preempted, noting both that restrictions on firing were permitted in *St. John Hotel* and that it is not uncommon for states to place limits on employee discharge. *R.I. Hosp. Ass'n*, 667 F.3d at 35-36; *see also Washington Serv. Contractors Coal.*, 54 F.3d at 817-18. One panel member explained that despite the "very real restraint" the challenged law placed on terminating employees, one should not infer that "Congress intended to leave the area of hiring and firing to be fully controlled by the free play of economic forces" in

instances outside of the NLRA's successorship doctrine. *Rhode Island Hospitality Ass'n*, 667 F.3d at 46-47 (Stahl, J. concurring).[2]

Plaintiffs ignore the precedent upholding Just Cause laws and instead repeatedly rely on *520 South Michigan Avenue Associates v. Shannon*, 549 F.3d 1119 (7th Cir. 2008), and *Chamber of Commerce v. Bragdon*, 64 F.3d 497 (9th Cir.1995), neither of which involved limitations on employment-at-will.  As the Second Circuit noted in *Cuomo*, "even assuming, *arguendo*, that these cases were correctly decided," they are "readily distinguishable" from the long line of cases upholding states' ability to impose minimum employment standards."  783 F.3d at 86 n.8 (noting that the ordinance in *Bragdon* represented a "much more invasive and detailed interference with the collective-bargaining process" because it "dictated the division of the total package that is paid in hourly wages directly to the worker and the amount paid by the employer in health, pension, and welfare benefits for the worker," and, likewise, that the statute in *Shannon* "establish[ed] terms of employment that would be very difficult for any union to bargain." (internal quotations omitted)).

---

[2] Plaintiffs' reliance on *Bassette v. Stone Container Corp.*, No. CV 89-33-M-CCL, 1992 WL 613289 (D. Mont. Oct. 9, 1992), is perplexing.  *See* Pls.' Summ. J. Mem. 14-15.  The District Court in that case made no sweeping *Machinists* preemption holding, but rather concluded that a discharged employee of a unionized employer could not bring an action under the Montana Wrongful Discharge from Employment Act in the period following impasse in collective bargaining.  *Id.* at *3.  The Ninth Circuit upheld *Bassette* on different grounds, finding that where a plaintiff brings an action under the state wrongful discharge statute alleging conduct that constitutes a violation of section 8 of the NLRA, the claim is arguably subject to the jurisdiction of the NLRB and therefore preempted under the *Garmon* doctrine.  *Bassette v. Stone Container Corp.*, 25 F. 3d 757, 761 (9th Cir. 1994); *see also Barnes v. Stone Container Corp.,* 942 F.2d 689 (9th Cir. 1991) (involving application of Montana's statute during period after contact expiration and before impasse).  Plaintiffs allege no such circumstances here.  The Montana Wrongful Discharge Statute remains in effect.

**B.      Minimum Labor Standards that Target Specific Geographies or Industries Are Not Preempted Under Machinists.**

Plaintiffs' argument that the Just Cause Laws are preempted because they apply only to certain employees is similarly unavailing.  The Second Circuit holds that statutorily imposed labor standards can target specific geographies and industries without raising preemption concerns.  *Cuomo,* 783 F.3d at 85-87 (holding that a state law setting minimum compensation standards for a subset of home care aides in New York City and surrounding counties was not preempted under *Machinists*).  As the circuit court explained, *Machinists* preemption does not "eliminate state authority to craft minimum labor standards for particular regions or areas of the labor market."  *Id.* at 86; *see also R.I. Hosp. Ass'n*, 667 F.3d at 33 n.15 ("That a state law only regulates one industry is an insufficient basis to render it pre-empted under *Machinists*.").

Plaintiffs disregard the law of this circuit and instead rely on *Shannon*, 549 F.3d 1119, and *Bragdon*, 64 F.3d 497, for the proposition that New York City cannot impose minimum labor standards on particular industries.  But even the Ninth Circuit, in cases post-dating *Bragdon*, has rejected this argument, noting that "the NLRA does not authorize us to pre-empt minimum labor standards simply because they are applicable only to particular workers in a particular industry." *Associated Builders & Contractors v. Nunn*, 356 F.3d 979, 990 (9th Cir. 2004).  Meanwhile, the Seventh Circuit's holding in *Shannon* was narrower than Plaintiffs suggest.  The court rejected a state law that established comprehensive terms and conditions for one occupation, within one industry, and within just one city in the state's jurisdiction.  *See Shannon*, 549 F.3d at 1139.

**C.      Labor Union Support for the Just Cause Laws Does Not Render Them Preempted Under Machinists.**

That unions supported the Just Cause legislation does not change the preemption analysis.  Plaintiffs highlight communications showing that union representatives from SEIU 32BJ supported the passage of the Just Cause laws and discussed legislative strategy to enact these worker protections.  Compl. ¶ 26; Pls.' Summ. J. Mem. 13.  This is both unsurprising and legally irrelevant.  Organizations representing workers, just like organizations representing employers, have a First Amendment right to advocate for favorable laws through the political process.

The labor movement often supports efforts to raise employment standards for all workers, non-union and union alike.  Historically, union support helped ensure the passage of landmark federal laws to protect workers, including Title VII of the Civil Rights Act of 1964 and the Occupational Safety and Health Act.  Theodore St. Antoine, "Labor Unions and Title VII: A Bit Player at the Creation Looks Back," in *A Nation of Widening Opportunities: The Civil Rights Act at 50* (Ellen D. Katz & Samuel R. Bagenstos eds., 2015); Judson MacLaury, *The Job Safety Law of 1970*, U.S. Dep't of Labor, https://www.dol.gov/general/aboutdol/history/osha (last visited Aug. 3, 2021); *see also Eastex, Inc. v. NLRB*, 437 U.S. 556, 565 (1978) ("[L]abor's cause is often advanced on fronts other than collective bargaining and grievance settlement within the immediate employment context.").

More recently, the Fight for $15 movement, supported by SEIU, advocated for and won state and local minimum wage laws that raised wages for 22 million workers in its first six years.  Yannett Lathrop, *Impact of the Fight for $15*, Nat'l Emp. L. Project (Nov. 29, 2018), https://www.nelp.org/publication/impact-fight-for-15-2018.  Unions have supported local laws, including in New York City, requiring advance notice for work schedules and guaranteeing rest

time between shifts.  Press Release, *NYC Council Passes Landmark Legislation for Fair Work Week and Better Jobs for Fast-Food, Retail Workers*, SEIU 32BJ (May 25, 2017), https://www.seiu32bj.org/press-release/nyc-council-passes-landmark-legislation-for-fair-work-week-better-jobs-for-fast-food-retail-workers/.  However, union advocacy for these statutes— advocacy protected by the First Amendment—in no way affects the applicable preemption standard.  Like union-backed state and local laws that set substantive standards for wages and hours, themselves core topics of collective bargaining agreements, these laws are not preempted under *Machinists*.

Crucially, "[f]ederal preemption doctrine evaluates what legislation does, not why legislators voted for it or what political coalition led to its enactment."  *N. Ill. Chapter of Associated Builders & Contractors, Inc. v. Lavin*, 431 F.3d 1004, 1007 (7th Cir. 2005) (Easterbrook, J.).[3]  The Second Circuit has adopted *Lavin*'s reasoning in market participant analysis for NLRA preemption, examining the objective purpose of a given law, not "allegations about individual officials' motivations in adopting the policy."  *Bldg. Indus. Elec. Contractors Ass'n v. City of New York*, 678 F.3d 184, 191 (2d Cir. 2012).  Similarly, even if the legislature enacts new labor standards intending to support the labor movement, this does not render the law preempted under *Machinists*.  *See Rest. L. Ctr. v. City of New York*, 360 F. Supp. 3d 192, 237 (S.D.N.Y. 2019).  Union support for the Just Cause Laws does not change the fact that they are not preempted by *Machinists* because they are permissible minimum labor standards.

---

[3] *Lavin* focused on whether the NLRA preempts a government condition on public project spending that required grant recipients enter into a project labor agreement.  But the Seventh Circuit has followed *Lavin* in the minimum labor standards context as well, finding it "irrelevant" under *Machinists* that a union lobbied for a law raising worker standards. *Shannon*, 549 F.3d at 1133 n.10.

Plaintiffs also argue that the Just Cause laws are preempted because they effectively treat union and non-union employees differently.  In fact, the Just Cause laws do no such thing; they apply to non-union and union employees alike.  In any event, treating employers covered by collective bargaining agreements differently is permissible under *Machinists* unless the treatment "creat[es] significant pressure on employers to encourage unionization of their employees." *Ass'n of Car Wash Owners Inc. v. City of New York,* 911 F.3d 74, 82 (2d Cir. 2018); *see also Fort Halifax*, 482 U.S. at 22 (carve-outs for collective bargaining agreements from minimum standards do not cause a preemption problem).  Here, even assuming *arguendo* that the laws treat unionized and non-unionized employees differently, Plaintiffs have offered no evidence to demonstrate that the law creates "significant pressure" on employers to encourage unionization.

## II.  THE JUST CAUSE LAWS ARE CONSISTENT WITH A WIDE ARRAY OF EXISTING LIMITATIONS ON EMPLOYMENT-AT-WILL

Plaintiffs paint the Just Cause Laws as a radical undertaking that overturns the "longstanding doctrine of at-will employment."  Compl. ¶ 1.  However, statutory, judicial, and contractual limitations on at-will employment are common around the world, throughout the United States, and within New York.  Thus, contrary to Plaintiffs' assertions, the Just Cause Laws are not a major incursion into an inviolate rule of employment-at-will, but rather build on a large body of law that limits the grounds upon which employers may take adverse employment actions.

Just cause laws are the norm in nearly all other industrial democracies, including Australia, Canada, Germany, the Netherlands, Sweden, and the United Kingdom.  Samuel Estreicher & Jeffrey M. Hirsch, *Comparative Wrongful Dismissal Law: Reassessing American Exceptionalism*, 92 N.C. L. Rev. 343, 357, 370, 395, 434 (2014); Kate Andrias & Alexander

Hertel-Fernandez, *Ending At-Will Employment*, Roosevelt Instit. 7-8 (Jan. 2021),

https://rooseveltinstitute.org/wp-content/uploads/2021/01/RI_AtWill_Report_202101.pdf;

William B. Gould, et al, *To Strike a New Balance: A Report of the Ad Hoc Committee on

Termination at Will and Wrongful Discharge*, Lab. & Emp. L. News, Feb. 8, 1984, at 2,

https://law.stanford.edu/wp-content/uploads/sites/default/files/publication/259017/doc/slspublic/

gould_strikeanewbalance.pdf.  Moreover, international law explicitly embraces just cause.  The

International Labor Organization Convention No. 158, Article 4 articulates that "the employment

of a worker shall not be terminated unless there is a valid reason for such termination connected

with the capacity or conduct of the worker or based on the operational requirements of the

undertaking, establishment or service."  International Labour Organization [ILO], *C158 –

Termination of Employment Convention, 1982 (No. 158)*, art. 4 (June 2, 1982),

https://www.ilo.org/dyn/normlex/en/f?p=NORMLEXPUB:12100:0::NO::P12100_ILO_CODE:C

158.

   Although most U.S. jurisdictions retain at-will employment as a background

principle, courts and legislatures have eroded the doctrine over time with numerous statutory and

judicial limitations on employers' ability to terminate employees.  Legislatures, conscious of the

harms to workers and society posed by an unfettered right to terminate employees, have created

statutory regimes that move away from past rules of "freedom of contract" and prohibit

employee terminations for harmful reasons.  Cynthia L. Estlund, *Wrongful Discharge

Protections in an At-Will World,* 74 Tex. L. Rev. 1655, 1657-62 (1996).  Congress prohibits

employer discrimination in hiring, firing, and establishing terms and conditions of employment

on the basis of "race, color, religion, sex, or national origin" in Title VII of the Civil Rights Act

of 1964.  42 U.S.C. § 2000e-2.  Other federal statutes prevent employers from terminating

employees on the basis of veteran status, 38 U.S.C. § 4311; age, 29 U.S.C. § 623(a); disability, 42 U.S.C. § 12112(a)-(b); or in retaliation for reporting regulatory violations or participating in federal investigations.  *See, e.g.,* Fair Labor Standards Act of 1938, 29 U.S.C. § 215(a)(3); Occupational Safety and Health Act of 1970, 29 U.S.C. § 660(c); Federal Water Pollution Control (Clean Water) Act of 1948, 33 U.S.C. § 1367(a); National Labor Relations Act, 29 U.S.C. § 158(a)(4).  Nearly all states, including New York, mirror federal law and impose anti-discrimination and anti-retaliation limitations on employment-at-will.  *See, e.g.*, N.Y. Exec. Law § 290, *et seq.*; N.Y. Lab. Law § 215; *see also* Sandra F. Sperino, *Revitalizing State Employment Discrimination Law,* 20 Geo. Mason L. Rev. 545, 557 (2013).

Courts across the United States have also limited the at-will employment framework through three common law doctrines.  Charles J. Muhl, *The Employment-At-Will Doctrine*, BLS Monthly Lab. Rev. 3-4 (Jan. 2001).  First, the public policy exception holds that employees are wrongfully discharged if their employer violated an express public policy of the state, such as by firing them for refusing to break the law.  *See, e.g., Swindol v. Aurora Flight Scis. Corp.*, 194 So.3d 847 (Miss. 2016); *Danny v. Laidlaw Transit Servs., Inc.*, 193 P.3d 128 (Wash. 2008); *Gen. Dynamics v. Super. Ct.*, 876 P.2d 487 (Cal. 1994); *Phipps v. Clark Oil & Refining Corp.*, 396 N.W.2d 588, 594 (Minn. 1986).  Second, the implied contract exception holds that certain employer representations about job security that employees rely on may be read as an implied employment contract with just cause protections.  *See, e.g.*, *McIlravy v. Kerr-McGee Coal Corp.*, 119 F.3d 876, 880 (10th Cir. 1997); *Foley v. Interactive Data Corp.*, 765 P.2d 373, 387 (Cal. 1988); *Weiner v. McGraw-Hill, Inc.*, 443 N.E.2d 441 (N.Y. 1982); *Toussaint v. Blue Cross & Blue Shield of Michigan*, 292 N.W.2d 880 (Mich. 1980).  And finally, some courts allow tort claims for violation of the duty of good faith and fair dealing in an employment

relationship, which prohibits terminations in bad faith.  *See, e.g., E.I. DuPont de Nemours & Co. v. Pressman*, 679 A.2d 436, 440, 444 (Del. 1996).

Furthermore, several U.S. jurisdictions have adopted express statutory just cause protections. Montana enacted the Wrongful Discharge From Employment Act (WDFEA) in 1987, codifying that a discharge is wrongful when "the discharge was not for good cause and the employee had completed the employer's probationary period of employment."  Mont. Code Ann. § 39-2-904.  Puerto Rico and the U.S. Virgin Islands have also established just cause protections: Puerto Rico mandates severance pay when workers are fired without just cause, and the Virgin Islands requires reinstatement with backpay for workers for any reason not enumerated by the statute.  P.R. Laws. Ann. tit. 29, §§ 185a-185m; V.I. Code Ann. tit. 24, §§ 76-79.  Philadelphia has passed similar just cause legislation to the Just Cause Laws, providing termination protections for parking lot workers in response to what workers described as arbitrary and unfair firings.  Phila. Code §§ 9-4700–9-4710.  Like the Just Cause Laws, Philadelphia's ordinance prohibits discharge of employees in a specific industry without just cause or a bona fide economic reason and requires the use of progressive discipline to satisfy the just cause standard. *Id*.[4]

Finally, just cause protections are often found in specific types of employment relationships.  Most federal, state, and municipal civil service employees are governed by just

---

[4] As discussed in Part I, *supra*, none of these laws has been found to be facially invalid under *Machinists*.  Montana's statute has been held preempted only as applied, in cases where a conflict existed with a particular bargaining process. *Bassette v. Stone Container Corp.*, 25 F. 3d 757, 761 (9th Cir. 1994); *Barnes v. Stone Container Corp.,* 942 F.2d 689 (9th Cir. 1991).  Puerto Rico's legislation has not been challenged as preempted by the NLRA, at least as reflected in any published opinion, and the First Circuit has elsewhere upheld limitations on at-will employment. *See R.I. Hosp. Ass'n*, 667 F.3d 17 (1st Cir. 2011).  Meanwhile, the U.S. Virgin Islands' just cause legislation survived a preemption challenge under *Machinists* in *St. John Hotel,* 218 F.3d at 243, and the Philadelphia law has not been challenged.

cause legislation.  Robert C. Bird, *Rethinking Wrongful Discharge: A Continuum Approach*, 73 U. Cin. L. Rev. 517, 530 (2004); *see, e.g.,* N.Y. Civ. Serv. Law § 75.  And CEOs, equipped with much more bargaining power than typical employees, typically contract around at-will employment and secure just cause protections for themselves.  Stewart J. Schwab & Randall S. Thomas, *An Empirical Analysis of CEO Employment Contracts: What do Top Executives Bargain For?*, 63 Wash. & Lee L. Rev. 231, 246-52 (2006).  Although such contractual terms are not required by law, they demonstrate that limitations on employment-at-will are prevalent in the U.S. and in no way radical.  Notably, CEO contracts commonly define "just cause" as willful misconduct, moral turpitude, or the failure to perform duties.  *Id.* at 248.  Poor job performance does not qualify as just cause for termination in most CEO contracts.  *Id.* at 249.  Collective bargaining agreements in the public and private sector likewise typically include just cause protections for employees.  William B. Gould, *The Idea of the Job as Property in Contemporary America: The Legal and Collective Bargaining Framework*, 1986 B.Y.U. L. Rev. 885, 896 (1986).

New York is no exception to the trend of placing limits on employers' power to fire employees.  Although New York courts have declined to eliminate employment-at-will through the common law, they have emphasized that the legislature has the power to limit or change the employment-at-will doctrine by statute.  *Murphy v. Am. Home Prods. Corp.*, 448 N.E.2d 86, 89-90 (N.Y. 1983).  And the legislature has done so, limiting employment-at-will in numerous ways.  In New York State, private employers may not terminate employment or take other adverse action not only on the basis of race, sex, age, and other commonly protected characteristics, but on such personal characteristics as familial status, status as a victim of domestic violence, or predisposing genetic characteristics.  N.Y. Exec. Law § 296(a).  Employers

are also barred from discharging employees for their political activities, recreational activities, or their use of cannabis in accordance with state law outside of work.  N.Y. Lab. Law § 201-D. And they are barred from discharging or otherwise retaliating against employees for reporting violations of state employment laws.  N.Y. Lab. Law § 215.

Furthermore, New York City has repeatedly exercised its well-established power to impose additional limits on at-will employment above and beyond the limitations established by the state.  The City's Human Rights Law, for example, expands on state-level protections by prohibiting employer discharge based on employees' caregiver status.  N.Y.C. Admin. Code § 8-107.  The City's Displaced Building Service Workers Protection Act requires successor employers to retain incumbent building service workers for a 90-day period during which they may not be fired without "cause," and if the workers' performance during the 90-day period is satisfactory, the successor employer must offer the employees continued employment.  N.Y.C. Admin. Code § 22–505; *see also id.* §§ 22-507–08, 22-510 (providing job security to incumbent grocery store, food service, and hotel workers during transitional successorship period).  The City's Paid Sick Leave law prohibits employers from taking adverse employment action against employees for taking time off for illness.  N.Y.C. Admin. Code § 20-918.  The City's Fair Workweek Law provides workers a host of rights regarding their schedules, and prohibits employers from retaliating against workers, including by ending their employment, for exercising those rights.  N.Y.C. Admin. Code § 20-1204.

In short, the vast array of statutory, judicial, and contractual limits on at-will employment in New York and in the United States shows that at-will employment is not a permanent fixture in American law.  The Just Cause Laws are no radical incursion into an inviolable employer right, but rather build on existing limitations on the ability of employers to

terminate employees or take other adverse employment actions.  Indeed, if anything, the Just

Cause laws simplify the current system, making it clear that certain adverse employment actions

are lawful only if based on just cause, rather than lawful only in the absence of a very long list of

wrongful motivations.

## III.   PLAINTIFFS' DORMANT COMMERCE CLAUSE ARGUMENTS ARE MERITLESS AND REPRESENT AN EFFORT TO RETURN TO *LOCHNER*-ERA LABOR RELATIONS

Plaintiffs contend that New York City's Just Cause Laws violate the Dormant

Commerce Clause (the "DCC").  The DCC is a doctrine arising out of negative implication from

the powers that Article I, Section 8 of the U.S. Constitution vests in Congress.  The doctrine bars

states and municipalities from enacting laws that discriminate against or unduly burden interstate

commerce.  *W. Lynn Creamery, Inc. v. Healy,* 512 U.S. 186, 192 (1994).  DCC doctrine

distinguishes between state laws that "affirmatively discriminate" against interstate commerce

and evenhanded laws that "burden interstate transactions only incidentally."  *Maine v. Taylor*,

477 U.S. 131, 138 (1986).  The former are "virtually invalid per se," *Nat'l Elec. Mfrs. Ass'n v.

Sorrell*, 272 F.3d 104, 108 (2d Cir. 2001).  In contrast, state laws that only incidentally burden

interstate commerce are lawful unless "the burden imposed on such commerce is clearly

excessive in relation to the putative local benefits," *Pike v. Bruce Church, Inc.,* 397 U.S. 137,

142 (1970).  Because the Just Cause laws do not affirmatively discriminate against interstate

commerce, and do not impose a judicially recognized burden on interstate commerce (certainly

none in excess of local benefits), they do not violate the DCC.  Plaintiffs' effort to expand the

DCC doctrine to disable New York City's rational decision to protect employees from unjust

termination represents a troubling effort to return to a rejected, pre-New Deal constitutional

approach to workplace regulation.

A.      **The Just Cause Laws Do Not Affirmatively Discriminate Against or Impose a Judicially Cognizable Burden on Interstate Commerce.**

Plaintiffs argue that the Just Cause Laws discriminate against interstate commerce by "placing onerous requirements only on local fast-food restaurants doing business with out-of-state or national companies—*i.e.*, 'chain[s]' that have '30 or more establishments nationally.'" Compl. ¶ 78 (citing N.Y.C. Admin. Code § 20-1201).  But nothing in the law affirmatively targets out-of-state business; rather, the law treats all chains with 30 or more establishments the same, whether those establishments are within New York or outside of it.

In *National Restaurant Association v. Commissioner of Labor*, the Third Department rejected a similar DCC challenge to a New York law setting a $15 minimum hourly wage for New York fast food employees (the "Fast Food Wage Law").  141 A.D.3d 185, 193-94 (3d Dept. 2016).  Like the Just Cause Laws, the Fast Food Wage Law applies only to fast food chains with thirty or more locations.  *Id.* at 193.  *National Restaurant Association* held that the thirty-restaurant threshold did not violate the DCC because it did not exclude or otherwise privilege restaurants with thirty locations "solely in New York," as compared to similarly sized chains with out-of-state locations.  *Id.* at 194.  The same reasoning applies here: whether the Just Cause Laws "put covered restaurants at a competitive disadvantage vis-à-vis restaurants who do not do business with national chains," Compl. ¶ 79, is irrelevant under the DCC.  Affirmative discrimination against interstate commerce occurs only when an "in-state commercial interest . . . is favored . . . by the challenged statutes at the expense of out-of-state competitors."  *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 169 (2d Cir. 2005).

Plaintiffs' reliance on *Cachia v. Islamorada*, 542 F.3d 839 (11th Cir. 2008), is inapposite.  Despite what the Plaintiffs claim, the alleged discrimination in *Cachia* is not "the same" as the Just Cause Laws.  Pls. Summ. J. Mem. 18.  The statute at issue in the Eleventh

18

Circuit's *Cachia* decision resulted in a prohibition of national chain restaurants in particular zoned areas.  542 F.3d at 842.  As the Eleventh Circuit recognized, under the Supreme Court's holding in *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333 (1977), when facially neutral statutes have the "practical effect of discriminating against interstate commerce," elevated scrutiny applies.  *Cachia*, 542 F.3d at 842 (citing *Hunt*, 432 U.S. at 354).  However, as the Supreme Court made clear in *Exxon Corporation v. Governor of Maryland*, heightened scrutiny is not appropriate where a statute does not "prohibit the flow of interstate goods, place added costs upon them, or distinguish between in-state and out-of-state companies in the retail market."  437 U.S. 117, 126 (1978).  The DCC "protects the interstate market, not particular interstate firms, from prohibitive or burdensome regulations."  *Id.* at 127-28.

Here, the Plaintiffs themselves recognize that the Just Cause Laws do not block national fast food franchisors from operating in New York.  Pls. Summ. J. Mem. 18; *Cachia*, 542 F.3d at 842 (emphasizing that the Florida ordinance's "complete prohibition . . . amounts to more than the regulation of methods of operation" permitted by *Exxon*).  Moreover, the Just Cause Laws do not grant a competitive advantage to similarly situated chain restaurants in New York; rather, they apply equally to all in-state fast food retailers with 30 or more establishments.  Accordingly, even under the Eleventh Circuit's reasoning in *Cachia*, the Just Cause Laws pose no DCC problem.  *See also Town of Southold v. Town of East Hampton*, 477 F.3d 38, 49 (2d Cir. 2007) ("Because these restrictions apply equally to all ferry operators . . . it does not confer a competitive advantage upon local business vis-à-vis out-of-state competitors.").  The First and Ninth Circuits have applied similar reasoning to uphold state regulations of national chain retailers against challenges under *Hunt* and *Exxon.  Wine & Spirits Retailers, Inc. v. Rhode Island*, 481 F.3d 1 (1st Cir. 2007), *cert. denied*, 552 U.S. 889 (2007) ("There is, for example, no

evidence of any carve-out or other device that would enable in-state entities to evade the challenged restrictions, nor is there any hint of a home-field advantage in connection with the State's enforcement of the restrictions. The absence of any such evidence is telling."); *Int'l Franchise Ass'n, Inc. v. City of Seattle*, 803 F.3d 389, 406 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 1838 (2016) (noting that the Seattle ordinance applying a rapid minimum wage-increase to franchise employers "harm[s] in-state franchisees . . . not the wheels of interstate commerce"); *Wal-Mart Stores, Inc. v. City of Turlock*, 483 F. Supp. 2d 987, 1011-1015 (E.D. Cal. 2006) (upholding against DCC challenge a state statute that prohibits both in- and out-of-state companies from establishing discount stores).

In the alternative, Plaintiffs assert that the Just Cause Laws violate the DCC because the incidental "burden imposed on interstate commerce is clearly excessive in relation to the putative local benefits." Compl. ¶ 80 (quoting *Pike*, 397 U.S. at 142). The Second Circuit recognizes three types of burdens on interstate commerce that may give rise to a DCC violation: when a law "(i) shifts the costs of regulation onto other states, permitting in-state lawmakers to avoid the costs of their political decisions, (ii) has the practical effect of requiring out-of-state commerce to be conducted at the regulating state's direction, or (iii) alters the interstate flow of the goods in question, as distinct from the impact on companies trading in those goods." *Brown & Williamson Tobacco Corp. v. Pataki*, 320 F.3d 200, 208–9 (2d Cir. 2003) (citations omitted). On a showing of such a burden, courts apply a flexible approach akin to rational-basis scrutiny, balancing a statute's incidental burdens on interstate commerce against its local benefits. *Pike,* 397 U.S. at 142; *e.g*., *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 471 (1981); *Grand River Enters. Six Nations, Ltd. v. Boughton*, 988 F.3d 114, 123 (2d Cir. 2021). Plaintiffs here do

not even allege that the Just Cause Laws impose any of these judicially recognized burdens on interstate commerce.

Far from meeting their initial burden to demonstrate "[s]*ignificantly* incommensurate burdens on interstate commerce [in relation to] the putative local purpose sought to be advanced," Plaintiffs fail to demonstrate that the Just Cause Laws impose *any* legally cognizable burden on interstate commerce.  *Brown*, 320 F.3d at 209(emphasis added); *see also Pryor*, 425 F.3d at 169.  Instead, Plaintiffs advance an invented DCC standard: the Just Cause Laws fail *Pike* balancing because they exempt similarly situated employees working in New York City restaurants not part of a chain with at least thirty locations.  Compl. ¶¶ 81-82.  To support this argument, Plaintiffs cite *Brown*.  *Brown,* however, stands for the entirely different proposition that under-inclusion raises suspicion of economic protectionism if a statute, without regard to its aims, discriminates between in-state and out-of-state actors.  *Id.* ¶ 82; 320 F.3d at 209.  As in *National Restaurant Association*, the Just Cause Laws do nothing of the sort.  Moreover, the Just Cause Laws provide a clear, necessary local benefit: providing frontline workers with job security in the event of a global pandemic to ensure they can "speak up when there's something wrong, when there are rats in your Chipotle . . . or when you don't have the PPE you need, or when your boss is sexually harassing you."  Steven Greenhouse, *Firing Workers on the Boss's Whim? New York Puts a Stop to That*, The American Prospect (Dec. 24, 2020), https://prospect.org/labor/firing-workers-on-the-boss-whim-new-york-just-cause-law/ (quoting City Council Member Brad Lander).

Moreover, had Plaintiffs established excessive burdens on interstate commerce in relation to local benefit, New York City's Just Cause Laws would still withstand *Pike's* deferential analysis.  "For a state statute to run afoul of the *Pike* standard*,* the statute, at a

minimum, must impose a burden on interstate commerce that is qualitatively or quantitatively different from that imposed on intrastate commerce."  *Sorrell*, 272 F.3d at 109*; see also USA Recycling, Inc. v. Town of Babylon*, 66 F.3d 1272, 1287 (2d Cir. 1995) (upholding town takeover of commercial garbage market because it does not impose "any different burdens on nonlocal as opposed to local garbage haulers.").  Nothing in the Just Cause Laws distinguishes between intra- and inter-state fast food chains: all similarly sized chains are treated identically.  Imposing no differential burden, the Just Cause laws do not violate the DCC.

### B. Plaintiffs' Dormant Commerce Clause Arguments Represent an Effort to Reinvigorate Discredited Lochner-Era Approaches to Workplace Law.

Not only are Plaintiffs' DCC arguments wholly lacking in doctrinal support, but they also represent an effort to revive a discredited and anachronistic approach to state and local workplace legislation.  In the early twentieth century, the Supreme Court repeatedly struck down democratically enacted legislation that protected workers' rights on the basis that such legislation violated the "liberty of contract."  Samuel R. Bagenstos, *Consent, Coercion, and Employment Law*, 55 Harv. C.R.-C.L. L. Rev. 409, 410 (2020); William E. Forbath, *The Shaping of the American Labor Movement*, 102 Harv. L. Rev. 1109, 1148-1178 (1989).  This period is known as the *Lochner* era, so named for the Supreme Court's infamous decision in *Lochner v. New York*, where the Court found that a statute limiting bakery workers to a 60-hour work week violated the liberty of contract between employers and employees, and specifically the Due Process Clause of the Fourteenth Amendment.  198 U.S. 45, 52 (1905).

During the *Lochner* era, the Court routinely substituted its judgments about what was best for workers for those of democratically elected legislators at the local, state, and federal level.  In so doing, the Court conjured a false depiction of worker choice and consent that imagined employers and employees on equal bargaining ground. *See, e.g.*, Bagenstos, *supra,* at

452; *Adkins v. Children's Hosp.*, 261 U.S. 525 (1923) (invalidating federal legislation mandating a minimum wage for women and children in the District of Columbia).

      The Supreme Court ultimately reversed course during the New Deal when it upheld modern labor and employment laws, as well as other important federal and state legislation. In so doing, the Court recognized the power imbalance between workers and their employers, rejected its prior definition of the liberty of contract, and deferred to the reasonable judgments of democratically elected legislators. *See, e.g., NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 23-24, 30 (1937) (upholding the NLRA and deferring to Congress's determination that "a single employee was helpless in dealing with an employer"); *W. Coast Hotel Co. v. Parrish*, 300 U.S. 379, 399 (1937) (upholding a state minimum wage law and deferring to the legislature's judgment that women workers were "relatively defenseless against the denial of a living wage."); *see also* Barry Friedman, *The Will of the People* 225-36 (2009).

      *Lochner* has since been repudiated. *See* Jamal Greene, *The Anticanon*, 125 Harv. L. Rev. 379, 417-422 (2011); *see also Williamson v. Lee Optical of Oklahoma Inc.,* 348 U.S. 483, 488 (1955) ("The day is gone when this Court uses the Due Process Clause of the Fourteenth Amendment to strike down state laws, regulatory of business and industrial conditions, because they may be unwise, improvident, or out of harmony with a particular school of thought."). Not surprisingly, therefore, Plaintiffs do not expressly invoke the liberty of contract and the Due Process Clause. Yet their contentions regarding both the Dormant Commerce Clause and federal labor law preemption rest on a similar foundation. As the Third Circuit observed in response to the challenge to the Virgin Islands' just cause statute, the Plaintiffs' opposition to just cause seems to rest on the "unsettling supposition that by enacting"

just cause, the "legislature is regulating in an area that has traditionally been left to the freedom of contract between an employer and an employee." *St. John Hotel*, 218 F.3d at 246.

At bottom, the Plaintiffs' opposition to the Just Cause Laws calls on the courts to second guess the New York City Council's reasoned judgments about workplace protections. Precedent, however, forecloses such an approach. As the Supreme Court has noted, "[]n labor pre-emption cases . . . our office is not to pass judgment on the reasonableness of state policy." *Livadas v. Bradshaw*, 512 U.S. 107, 120 (1994). And with respect to economic legislation, courts must to defer to the concievable rational judgments of the legislature. *See, e.g., Armour v. City of Indianapolis,* 566 U.S. 673, 680-81 (2012); *Sensational Smiles, LLC v. Mullen*, 793 F.3d 281, 284-88 (2d. Cir. 2015) ("Much of what states do is to favor certain groups over others on economic grounds. We call this politics. Whether the results are wise or terrible is not for us to say, as favoritism of this sort is certainly rational in the constitutional sense.").

Here, the Council's decision clearly had a rational basis. Prior to the New York City Council's passage of the Just Cause Laws, the City's fast food workers were at the mercy of their employer's good graces to retain their employment and livelihood. A 2019 survey of the City's fast food workers found that fifty percent of respondents had been "fired, laid off, or compelled to quit a fast-food job due to intolerable working conditions." Ctr. for Popular Democracy, *Fired on a Whim: The Precarious Existence of NYC Fast-food Workers* 1 (Feb. 2019), https://s27147.pcdn.co/wp-content/uploads/Just-Cause-February-2019.pdf. Furthermore, sixty-five percent of fast food workers indicated that, on one or more occasions, their employer had terminated their employment without providing a reason for doing so. *Id.* The problems resulting from employment-at-will became more acute during the COVID-19 pandemic, when

many workers feared speaking up due to their precarious employment status.  Acting well within

its police powers, and consistent with federal law, the New York City Council responded.

## **CONCLUSION**

For the forgoing reasons, this Court should not grant the relief sought by the

Plaintiffs.[5]


Dated:  August 10, 2021
     New York, New York

                         Respectfully submitted,

                         */s/ Professor Kate Andrias*
                         COLUMBIA LAW SCHOOL
                         Jerome Greene Hall, Room 545
                         435 West 116th Street
                         New York, NY 10027
                         Tel: 212.854.4585
                         *Amicus Curiae Professor of Labor Law*[6]

                         */s/ Hanan B. Kolko*
                         Hanan B. Kolko
                         COHEN, WEISS AND SIMON LLP
                         900 Third Avenue, Suite 2100
                         New York, NY 10022
                         Telephone: (212) 356-0214
                         Facsimile: (646) 473-8214
                         HKolko@cwsny.com
                         *Attorneys for Amici Curiae Professors of Labor Law*

---

[5] Special thanks to Alex Rowell, a recent graduate of University of Michigan Law School and research assistant for Professor Andrias, Megan Stater Shaw, an associate at Cohen, Weiss and Simon LLP currently awaiting admission in New York, and Mackenzie Bouverat, a summer clerk at Cohen, Weiss and Simon LLP and rising 3L at Harvard Law School, for their significant contributions to this brief.

[6] If the instant motion is granted, Professor Andrias will file a motion to appear Pro Hac Vice before this Court.

**Appendix A**

**Kate Andrias**
Professor of Law
Columbia Law School

**Mark Barenberg**
Isidor and Seville Sulzbacher Professor of Law
Columbia Law School

**James J. Brudney**
Joseph Crowley Chair in Labor and Employment Law
Fordham University School of Law

**Cynthia Estlund**
Catherine A. Rein Professor of Law
New York University School of Law

**Catherine Fisk**
Barbara Nachtrieb Armstrong Professor of Law
University of California, Berkeley, School of Law

**Charlotte Garden**
Professor of Law
Co-Associate Dean for Research and Faculty Development
Seattle University School of Law

**William B. Gould IV**
Charles A. Beardsley Professor of Law, Emeritus
Stanford Law School
Former Chairman, National Labor Relations Board (1994-1998)

**Brishen Rogers**
Professor of Law
Georgetown University Law Center

**Laura Weinrib**
Fred N. Fishman Professor of Constitutional Law
Suzanne Young Murray Professor, Radcliffe Institute for Advanced Study
Harvard Law School