## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

RESTAURANT LAW CENTER, and
NEW YORK STATE RESTAURANT
ASSOCIATION,

               *Plaintiffs*,

      v.

CITY OF NEW YORK, and
SANDRA ABELES, in her official capacity
as Commissioner of the NEW YORK
CITY DEPARTMENT OF CONSUMER
AND WORKER PROTECTION,

               *Defendants*.

Case No. 1:21-cv-04801-DLC

*Oral Argument Requested*

## CONSOLIDATED REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO CROSS-MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...................................................................................................... 1

II.  ARGUMENT .......................................................................................................... 3

    A.  Plaintiffs Have Standing—Both Associational and Direct. .................................. 3

    B.  The NLRA Preempts the Just Cause Laws. ........................................................ 6

        1.  *Machinists* Preempts State or Local Regulation of Areas that Federal Labor Law Intends to Leave Unregulated. ................................... 7

        2.  The Just Cause Laws Are Not Minimum Labor Standards. ..................... 9

        3.  The Just Cause Laws Directly Affect Labor Dispute Resolution. ........... 14

        4.  The City Cites No Cases Upholding Any Law Similar to the Just Cause Laws Against a *Machinists* Preemption Challenge...................... 15

    C.  The Just Cause Laws Violate the Dormant Commerce Clause. .......................... 18

        1.  The Burdens of the Just Cause Laws Fall Exclusively on Entities Engaged in Interstate Commerce. ........................................................ 18

        2.  The City Offers No Justification (Other than Protectionism) for the Laws' Under-Inclusiveness and Fails to Demonstrate that Their Purpose Could Not Be Served by Nondiscriminatory Means. ............... 20

        3.  The Just Cause Laws Impose Significant Costs on Employers. ............. 21

    D.  The Just Cause Laws Violate New York Law Establishing At-Will Employment.................................................................................................... 23

    E.  The Just Cause Laws' Mandatory Arbitration Provision Is Illegal.................... 26

    F.  This Court Should Exercise Supplemental Jurisdiction Over the State Law Claims. ............................................................................................................. 29

III.  CONCLUSION.................................................................................................... 30

i

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*520 S. Mich. Ave. Assocs., Ltd. v. Shannon,*
    549 F.3d 1119 (7th Cir. 2008) ....................................................................... *passim*

*Alcantara v. Allied Props., LLC,*
    334 F. Supp. 2d 336 (E.D.N.Y. 2004) ...................................................................17

*People ex rel. Alpha Portland Cement Co. v. Knapp,*
    129 N.E. 202 (N.Y. 1920).......................................................................................28

*Am. Ship Bldg. Co. v. N.L.R.B.,*
    380 U.S. 300 (1965)...........................................................................................2, 15

*Amalgamated Ass'n of St. Elec. Ry. & Motor Coach Employees v. Wisconsin*
    *Employment Relations Bd.,*
    340 U.S. 383 (1951)................................................................................................26

*Armstrong v. Exceptional Child Center, Inc.,*
    575 U.S. 320 (2015)..................................................................................................4

*AT & T Techs., Inc. v. Comm'cns Workers of Am.,*
    475 U.S. 643 (1986)................................................................................................26

*Barnes v. Stone Container Corp.,*
    942 F.2d 689 (9th Cir. 1991) ..................................................................................17

*Bassette v. Stone Container Corp.,*
    No. 89-33, 1992 WL 613289 (D. Mont. Oct. 9, 1992) ...........................................17

*Bldg. Owners & Managers Ass'n of Chi. v. City of Chi.,*
    No. 19-7212, 2021 WL 168966 (N.D. Ill. Jan. 19, 2021).........................................9

*Boorstein v. 1261 48th St. Condo.,*
    946 N.Y.S.2d 200 (2012)........................................................................................25

*Boys Markets, Inc. v. Retail Clerks Union, Local 770,*
    398 U.S. 235 (1970)................................................................................................13

*C & A Carbone, Inc. v. Town of Clarkstown, N.Y.,*
    511 U.S. 383 (1994)................................................................................................20

*Cachia v. Islamorada,*
    542 F.3d 839 (11th Cir. 2008) ...........................................................................19, 20

*Cal. Grocers Ass'n v. City of L.A.,*
   52 Cal. 4th 177 (2011) .................................................................................17

*Cannon v. Edgar,*
   33 F.3d 880 (7th Cir. 1994) .......................................................................15

*Carter v. Rosenberg & Estis, P.C.,*
   No. 95-10439, 1997 WL 299398 (S.D.N.Y. June 5, 1997) (Cote, J.) ....................26

*Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay,*
   868 F.3d 104 (2d Cir. 2017) ......................................................................5, 6

*Chamber of Commerce of U.S. v. Bragdon,*
   64 F.3d 497 (9th Cir. 1995) ....................................................................8, 11

*Chamber of Commerce of U.S. v. Brown,*
   554 U.S. 60 (2008) .............................................................................7, 8, 15

*City of New York v. Chevron Corp.,*
   993 F.3d 81 (2d Cir. 2021) .........................................................................23

*Colodney v. Continuum Health Partners, Inc.,*
   No. 03-7276, 2004 WL 829158 (S.D.N.Y. Apr. 15, 2004) (Cote, J.) ...................24

*Concerned Home Care Providers, Inc. v. Cuomo,*
   783 F.3d 77 (2d Cir. 2015) ................................................................. *passim*

*Entergy Nuclear Vermont Yankee, LLC v. Shumlin,*
   733 F.3d 393 (2d Cir. 2013) .......................................................................13

*Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton,*
   841 F.3d 133 (2d Cir. 2016) ......................................................................4, 5

*Golden State Transit Corp. v. City of Los Angeles,*
   475 U.S. 608 (1986) ........................................................................8, 14, 15

*Horn v. N.Y. Times,*
   100 N.Y.2d 85 (2003) ...........................................................................24, 26

*Hotel Emps. & Rest. Emps. Union, Local 57 v. Sage Hosp. Res., LLC,*
   390 F.3d 206 (3d Cir. 2004) .......................................................................15

*Hudson View II Associates v. Gooden,*
   222 A.D.2d 163 (N.Y. App. Div. 1st Dep't 1996) ..........................................27

*Hughes v. Oklahoma,*
   441 U.S. 322 (1979) ..................................................................................21

*Hunt v. Washington State Apple Advertising Commission*,
  432 U.S. 333 (1977)......................................................................................4, 5

*In Harter Equipment, Inc.*,
  280 NLRB No. 71 (1986) ...............................................................................15

*Jancyn Mfg. Corp. v. Suffolk Cty.*,
  71 N.Y.2d 91 (1987) ........................................................................................23

*Katt v. City of New York*,
  151 F. Supp. 2d 313 (S.D.N.Y. 2001).............................................................26

*KNET, Inc. v. Ruocco*,
  145 A.D.3d 989 (N.Y. App. Div. 2d Dep't 2016) ..........................................27

*Kolari v. New York-Presbyterian Hosp.*,
  455 F.3d 118 (2d Cir. 2006)............................................................................30

*Loyal Tire & Auto Center, Inc. v. Town of Woodbury*,
  445 F.3d 136 (2d Cir. 2006)............................................................................13

*Maine v. Taylor*,
  477 U.S. 131 (1986)............................................................................19, 20, 21

*Mayor of New York v. Council of City of New York*,
  780 N.Y.S.2d 266 (N.Y. Sup. Ct. 2004) .........................................................23

*Mental Hygiene Legal Service v. Cuomo*,
  13 F. Supp. 3d 289 (S.D.N.Y. 2014), *order vacated by* 472 F. App'x 45 (2d
  Cir. 2012) ......................................................................................................5, 6

*Metro. Life Ins. Co. v. Massachusetts*,
  471 U.S. 724 (1985)............................................................................7, 12, 13

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State*,
  75 N.Y.2d 175 (1990) ......................................................................................28

*Mount St. Mary's Hosp. of Niagara Falls v. Catherwood*,
  260 N.E.2d 508 (N.Y. 1970)............................................................................26

*Moya v. U.S. Dep't of Homeland Sec.*,
  975 F.3d 120 (2d Cir. 2020)..............................................................................6

*Murphy v. Am. Home Prods. Corp.*,
  58 N.Y.2d 293 (1983) ...............................................................................24, 27

*Murphy v. Am. Home Prods. Corp.*,
  136 A.D.2d 229 (N.Y. App. Div. 1st Dep't 1988).....................................27, 28

*Nat'l Rest. Ass'n v. Comm'r of Labor,*
    141 A.D.3d 185 (N.Y. App. Div. 3d Dep't 2016) ................................................19

*Nnebe v. Daus,*
    644 F.3d 147 (2d Cir. 2011) ................................................................................5

*Peabody Galion v. Dollar,*
    666 F.2d 1309 (10th Cir. 1981) ..........................................................................16

*Pelican Chapter, Assoc. Builders & Contractors, Inc. v. Edwards,*
    128 F.3d 910 (5th Cir. 1997) ................................................................................5

*Pike v. Bruce Church, Inc.,*
    397 U.S. 137 (1970) ...........................................................................................19

*R.I. Hospitality Ass'n v. City of Providence,*
    667 F.3d 17 (1st Cir. 2011) ............................................................................7, 17

*Rest. Law Ctr. v. City of New York,*
    360 F. Supp. 3d 192 (S.D.N.Y. 2019), *vacated after settlement* ...................4, 6, 10

*Rondout Elec., Inc. v. NYS Dep't of Labor,*
    335 F.3d 162 (2d Cir. 2003) ..............................................................................15

*Sabetay v. Sterling Drug,*
    69 N.Y.2d 329 (1987) .........................................................................................25

*Scott v. City of New York,*
    592 F. Supp. 2d 386 (S.D.N.Y. 2008) ...............................................................13

*St. Thomas–St. John Hotel & Tourism Ass'n, Inc. v. Gov't of U.S. Virgin Islands,*
    218 F.3d 232 (3d Cir. 2000) ........................................................................15, 16

*Three D, LLC,*
    361 NLRB No. 31 (2014) .....................................................................................6

*United Parcel Service, Inc.,*
    369 NLRB No. 1 (2019), *vacated in part on other grounds* ...................................2

*Vucetovic v. Epsom Downs, Inc.,*
    10 N.Y.3d 517 (2008) .........................................................................................25

*Ex parte Young,*
    209 U.S. 123 (1908) .............................................................................................4

**Statutes**

28 U.S.C. § 1367 ..........................................................................................29, 30

V.I. Code Ann. tit. 24, §§ 76-78 ................................................16

N.Y. Exec. Law § 297(9) ......................................................28

N.Y. Exec. Law § 290 ..........................................................16

N.Y. Gen. Mun. Law § 239-s..................................................29

N.Y. Lab. Law § 215 ...........................................................16

National Labor Relations Act ........................................... *passim*

NYCC § 20-1272 ...................................................................2

**Other Authorities**

New York Constitution..............................................24, 28, 29

CPLR article 75....................................................................29

Elkouri & Elkouri, *How Arbitration Works* (8th ed. 2016) .......................7, 8

Brand & Biren, *Discipline & Discharge in Arbitration* (3d ed. 2015) ...........................8

## I.      INTRODUCTION

In their Motion for Summary Judgment, Plaintiffs detailed the unprecedented, preempted, and unconstitutional nature of the City's new Just Cause Laws.  The City[1] does not deny that the Just Cause Laws are unprecedented.  No municipality or State has ever, anywhere in the country, attempted to impose such a detailed, intrusive regulation of the employer–employee relationship, much less with rules that practically affect only restaurants and franchisees engaged in interstate commerce.  Nor has any court ever upheld such a law against the challenges here.

Instead, in an effort to sidestep *Machinists* preemption and the U.S. and New York constitutions, the City attempts to minimize the Laws' requirements, claiming they merely obligate Targeted Fast-Food Employers to "(i) have a valid reason to discharge their employees, (ii) give written notice of such discharge, and (iii) implement a progressive discipline policy that will guarantee fair treatment."  Memorandum of Law in support of Defendants' Cross-Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment, Dkt. 41 ("Def. Br.") at 1, 13.  Unfortunately for Defendants, it is undisputed that the Laws go much further; they govern the entire process of workplace performance management, including but not limited to: new-hire probationary periods, seniority systems, discipline (including limiting any progressive discipline to a one-year lookback period), hours reductions, sufficiency of investigations and training, layoffs, and recalls,[2] all with the express goal of mirroring the outcome of a collectively bargained agreement.  The Laws even dictate the dispute resolution process post-separation, forcing mandatory arbitration on covered employers, a process that—as the National Labor Relations Board itself recognizes—goes to the heart of the collective bargaining relationship.  *See,*

---

[1] This brief refers to Defendants City of New York and Sandra Abeles, in her official capacity as Commissioner of the New York City Department of Consumer and Worker Protection ("DCWP"), collectively as "the City."
[2] *See* Defendants' Local Civil Rule 56.1 Statement of Material Undisputed Facts, Dkt. 42 ("Def. SOUF") ¶¶ 57-66; NYCC §§ 20-1271 to 1273.

*e.g., United Parcel Service, Inc.*, 369 NLRB No. 1, at *4 (2019), *vacated in part on other grounds* (noting "[a] substantial body of Federal jurisprudence . . . supports the proposition that the establishment by parties to a collective-bargaining relationship of an autonomous system of industrial self-government *through grievance arbitration* is the culmination of the statutory scheme that Congress empowered the [NLRB] to uphold") (emphasis added).

Simply put, the Just Cause Laws cannot stand under either federal or state law.  First, the Just Cause Laws are preempted by the National Labor Relations Act ("NLRA") under the *Machinists* doctrine.  As discussed below, the Just Cause Laws are a far cry from the kinds of "minimum labor standards" cited in the City's brief—such as a broadly applicable minimum wage—and the City's attempt to minimize the Laws' requirements is a tacit recognition of this reality.  Moreover, the City's own arguments prove the Laws are preempted.  As the City's brief explains, federal labor law preempts state or city action that regulates the use of economic weapons that are recognized and protected under the NLRA (*e.g.*, strikes or lockouts).  Def. Br. 9.  Although this is but one application of the *Machinists* doctrine, it proves Plaintiffs' point.  The Just Cause Laws impose *exactly* such a restriction, barring entirely the employer's right to lockout workers, because a lockout falls outside of the narrow, enumerated reasons a Targeted Fast-Food Employer can reduce work hours under the Law.  NYCC § 20-1272(a)-(c), (g).[3]  Thus, under even the Defendants' own overly narrow construction of the preemption doctrine, the Laws must fail.

Second, the Laws violate the dormant Commerce Clause.  The City argues that the Laws are facially neutral, Def. Br. 18, but it does not deny that, in practical effect, the Just Cause Laws apply only to interstate restaurants (and franchisees who do business with interstate franchisors).

---

[3] A lockout is a complete reduction in offered hours—for all employees in a bargaining unit—sometimes referred to as a "temporary layoff" that typically is intended to pressure the union to agree to the employer's bargaining demands and is a valid economic weapon in bargaining.  *Am. Ship Bldg. Co. v. N.L.R.B.*, 380 U.S. 300, 301, 306-10 (1965).

In effect, then, the Laws exempt intrastate restaurants from their scope.  Because the practical effect of the Laws is to burden interstate commerce, they face strict scrutiny, a burden that the City does not even attempt to meet.  It offers no argument—much less any evidence—supporting imposing the Laws only on interstate restaurants.

Third, the Just Cause Laws both go beyond the City's constitutional authority and are preempted by New York State's well-established law that all employment contracts are at-will, absent an express agreement or discriminatory purpose.  The City claims common law can never preempt its laws, but that argument ignores preemption cases stating the opposite and constitutional language forbidding abrogating general laws like the at-will employment rule.

Fourth, the compulsory arbitration provisions violate federal and state law by imposing arbitration without the consent of the parties, depriving defendants of the right to trial by a jury in actions for compensatory damages, and impermissibly depriving state courts of jurisdiction.  The City's response either ignores or misreads the governing cases that support these arguments.

Finally, the City's diversionary standing and supplemental jurisdiction arguments are meritless.  This Court can readily dispose of the City's standing argument.  *Compare* Def. Br. 6-7 (arguing associational standing is inapplicable here), *with infra* at 2 (citing cases exercising associational standing in dormant Commerce Clause and preemption cases).  And this Court should exercise supplemental jurisdiction because the state claims relate to the federal claims (all challenging the same law), the federal claims should succeed and not be dismissed, and the straightforward state law questions here are neither novel nor complex.

## II.    ARGUMENT

### A.    Plaintiffs Have Standing—Both Associational and Direct.

Defendants' single paragraph standing argument (Def. Br. 6-7) should be easily rejected.  First, Defendants do not challenge that the RLC and NYSRA both have associational standing.

Indeed, it cannot be disputed that (1) both organizations have members directly affected (and injured) by the law, Plaintiffs' Local Rule 56.1 Statement of Undisputed Facts, Dkt. 23 ("Pl. SOUF") ¶¶ 70-78, (2) both organizations have interests germane to the Laws at issue here, *id.* ¶¶ 85-86 (Battaglia Decl. Exs. 3-4), and (3) the claims and requested relief do not require participation of individual members in the lawsuit. *See also, e.g.*, Declaration of Angelo Amador in Support of Response to Cross-Motion for Summary Judgment ("Amador Decl.") ¶¶ 3-4; Declaration of Melissa Fleischut in Support of Response to Cross-Motion for Summary Judgment ("Fleischut Decl.") ¶¶ 1-2.  As such, both organizations clearly have associational standing. *See Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343 (1977).

Instead, Defendants assert in a single sentence that the associational standing doctrine does not apply.  It does.  Although the Second Circuit has held that cases that rely solely on Section 1983 to argue personal constitutional rights have been infringed must be supported by direct standing, it is uncontroversial (as Plaintiffs noted in their opening brief) that *preemption* challenges involve an equitable cause of action not dependent on Section 1983.  *See* Memorandum of Law in Support of Motion for Summary Judgment, Dkt. 22 ("Pl. Br.") at 8 (noting "cause of action in equity" to bring preemption claims) (citing *Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton*, 841 F.3d 133, 144 (2d Cir. 2016)); Compl. ¶ 16 (citing *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 326 (2015); *Ex parte Young*, 209 U.S. 123, 155-56 (1908)).  Indeed, a case Defendants cite recognizes that the Section 1983 "standing limitation does not apply to" preemption challenges "brought under both this Court's 'equity' jurisdiction and Section 1983." *Rest. Law Ctr. v. City of New York*, 360 F. Supp. 3d 192, 203 n.3 (S.D.N.Y. 2019), *vacated after settlement* (citing above-referenced cases).  Thus, federal preemption challenges may be pursued by Plaintiffs based on their associational standing.  *Id.*

So too with dormant Commerce Clause challenges—they are a type of "preemption" case where a plaintiff seeks declaratory and injunctive relief "to prohibit the enforcement of state or municipal orders alleged to violate federal law," *Friends of the E. Hampton Airport*, 841 F.3d at 144, and the seminal associational standing case, *Hunt*, concerned a dormant Commerce Clause challenge.  432 U.S. at 343; *see also Pelican Chapter, Assoc. Builders & Contractors, Inc. v. Edwards*, 128 F.3d 910, 916 n.3 (5th Cir. 1997) (finding associational standing in dormant Commerce Clause case).  Defendants cite no case requiring direct (as opposed to associational) standing for preemption challenges or dormant Commerce Clause challenges, let alone Plaintiffs' state-law challenges, which are certainly not raised under Section 1983.

Second, and in any event, both Plaintiffs also have direct standing, as they both indisputably have diverted resources from their core activities to counsel members regarding their rights and obligations under the Just Cause Laws.  *See* Compl. ¶ 21; Amador Decl. ¶¶ 10-17 (RLC's diverted resources); Fleischut Decl. ¶¶ 5-8 (NYSRA's diverted resources).  But for the Laws, both organizations would be spending time and money on other activities—such as assisting members in starting, developing, and growing their businesses through outreach efforts, educational meetings and seminars, and lobbying state and local governments.  *See* Amador Decl. ¶¶ 4-8, 12-14; Fleischut Decl. ¶¶ 6-7.  That more than suffices for the mere "'perceptible impairment' of an organization's activities" to establish direct standing.  *Nnebe v. Daus*, 644 F.3d 147 (2d Cir. 2011) ("perceptible opportunity cost" from counseling just a few members as a result of law suffices for injury); *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 110 (2d Cir. 2017) (diverting time, money, and resources to educating members and "prepar[ing] its response" to the challenged law, to detriment of other priorities, suffices for

5

injury traceable to City's actions).[4]

Defendants' cross-motion for summary judgment asks for this evidence of resource diversion, and it is attached to Plaintiffs' opposition brief here.  *See generally* Amador Decl.; Fleischut Decl. Thus, there can no longer be any dispute regarding standing.  *See Rest. Law Ctr.*, 360 F. Supp. 3d at 205-08 (case cited by City, Def. Br. 7, holding that a declaration like those attached here sufficed for direct standing).  Moreover, if this Court finds that *one* of the Plaintiffs has standing, both may proceed.  *See Centro*, 868 F.3d at 109 (where "multiple parties seek the same relief, the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement") (quotation omitted).  In short, Plaintiffs easily satisfy standing.

## B.    The NLRA Preempts the Just Cause Laws.

In its opening brief, Plaintiffs explained that the Just Cause Laws' targeted invasion into the collective-bargaining process was motivated by a desire to provide "what a union provides"—including just-cause only termination, mandatory arbitration, detailed disciplinary procedures, a progressive discipline policy, and seniority-based layoffs—to certain fast-food employees without *any* corresponding bargaining concessions to management.  Pl. Br. 8-15.  The City never credibly disputes that (1) these features are the keystones of collective bargaining agreements ("CBAs"), *see, e.g.*, *Three D, LLC*, 361 NLRB No. 31, at 9 n.9 (2014) (Member Miscimarra, dissenting in part) ("just cause" provisions "have been ubiquitous in collective-bargaining agreements throughout the [NLRA's] history") (citing examples of CBAs with just cause provisions); Elkouri

---

[4] Defendants hope to escape the clear force of these cases by citing (at 7) an inapposite case, *Mental Hygiene Legal Service v. Cuomo*, 13 F. Supp. 3d 289, 299 (S.D.N.Y. 2014), *order vacated by* 472 F. App'x 45 (2d Cir. 2012), which held merely that a "state agency under a statutory mandate" to initial legal actions to protect victims from "abuse of mistreatment" could not rely on the filing of a legal action as an injury.  785 F. Supp 2d 205, 214 (S.D.N.Y. 2011). Neither Plaintiff here is relying on litigating this case for their injury, nor are their core activities focused only on litigation, *see* SOUF ¶¶ 85-86 (Battaglia Decl. Exs. 3-4), so *Mental Hygiene* is irrelevant.  *See also Moya v. U.S. Dep't of Homeland Sec.*, 975 F.3d 120, 128-30 (2d Cir. 2020) (holding perceptible opportunity cost from diversion of resources suffices for standing even if new activity (there, navigating immigration laws) is similar to activities at core of plaintiff's mission).

& Elkouri, *How Arbitration Works* § 15.2.A.i (8th ed. 2016) (just cause limitation read into every CBA, but irrelevant in non-union context); (2) they apply only to certain targeted fast-food employers; or (3) they are far more targeted invasions of the bargaining process than any law upheld under *Machinists*.  The City's defenses of the Just Cause Laws are unavailing.

   1.   ***Machinists* Preempts State or Local Regulation of Areas that Federal Labor Law Intends to Leave Unregulated.**

The City's repeated insistence that the *Machinists* doctrine does not preempt "*all* local regulation that touches or concerns . . . employ[ment]" relationships, Def. Br. 10 (emphasis added), is true but irrelevant.  Plaintiffs did not argue that *all* laws regulating employment relationships are preempted.

On the other hand, the City's assertion that *Machinists* never preempts any substantive employment conditions is demonstrably false, and the City's cases do not support it.  To the contrary, the cited cases hold only that some substantive regulations involving employment are not preempted.  *See* Def. Br. 9-11 (noting that some baseline standards, like minimum wage laws, are permissible under *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724 (1985), *Concerned Home Care Providers, Inc. v. Cuomo*, 783 F.3d 77, 85 (2d Cir. 2015), and *R.I. Hospitality Ass'n v. City of Providence*, 667 F.3d 17 (1st Cir. 2011)).

In short, there is an "outer boundary beyond which a state law can no longer be deemed a 'minimum labor standard.'"  *R.I. Hospitality*, 667 F.3d at 32 (citing *Metro. Life*).  As such, cases uniformly hold that *Machinists* preempts substantive employment requirements that are inconsistent with the goals of the NLRA, including, *inter alia*, those that have the effect of encouraging or discouraging collective bargaining.[5]

---

[5] *See Metro Life*, 471 U.S. at 755, 757 (noting that substantive requirements are preempted if they "encourage []or discourage the collective-bargaining process" or are "inconsistent with the general legislative goals of the NLRA" or have more than an "indirect effect on the right of self-organization"); *Concerned Home Care Providers*, 783 F.3d at

Indeed, *Chamber of Commerce of U.S. v. Bragdon*, 64 F.3d 497 (9th Cir. 1995) and *520 S. Mich. Ave. Assocs., Ltd. v. Shannon*, 549 F.3d 1119 (7th Cir. 2008), both squarely held that substantive employment requirements were preempted by *Machinists* because they were not "minimal" labor standards but "stringent requirements" that interfered with the bargaining process, *id.* at 1135-36.  And *Bragdon* has been neither "repudiated," as the City suggests (at 12), nor overturned.  (The City never asserts *Shannon* has been called into question.)  Far from rejecting *Bragdon*, *Associated Builders & Contractors of Southern California, Inc. v. Nunn* reaffirmed *Bragdon*'s holding that substantive requirements may be preempted under *Machinists*.  356 F.3d 979, 990 (9th Cir. 2004).  *Nunn*, applying *Bragdon*, simply held that a minimum-wage law is not preempted *merely* because it applied to particular trades if there is *no other* indication it was meant to favor unionization.  *Id.*

Laws that interfere with the bargaining process are not free from *Machinists* preemption just because they substantively regulate the employer–employee relationship.[6]

---

85 (holding not that all baseline standards are compatible with the NLRA, as the City claims, Def. Br. 9-10, but that a wage parity/minimum wage law survived preemption because "[s]tates have traditionally sought to remedy the problem of depressed wages by regulating payment rates" and the regulation at issue was not "designed to encourage or discourage" collective bargaining and did not "treat[] employers differently based on whether they employ unionized workers," so *that* regulation was "not incompatible" with the NLRA); *R.I. Hospitality*, 667 F.3d at 32.

Other cases also squarely support that substantive requirements (not just specific limits on economic weapons) may be preempted by *Machinists*.  *See, e.g.*, *Chamber of Commerce of U.S. v. Brown*, 554 U.S. 60, 62, 65-66 (2008) (California law prohibiting employers receiving state funds from using them to assist, promote, or deter unionizing" were preempted because there is a "zone protected and reserved for market freedom"); *id.* at 68 (the NLRA favors "uninhibited, robust, and wide-open debate in labor disputes") (citation omitted); *Golden State Transit Corp. v. City of Los Angeles*, 475 U.S. 608, 616 (1986) (the NLRA encourages the "practice and procedure of collective bargaining" and consciously established only a "framework" for negotiations, leaving the "terms and conditions of employment" and any "agreement" between a union and employer to the parties); *id.* at 619 (City using traditional police powers to pressure a taxi company into reaching settlement destroyed "the balance of power designed by Congress").

[6] Moreover, the City's argument on substantive requirements proves too much:  if it were true that no substantive requirement is ever preempted by *Machinists*, the City could literally take an existing CBA and (after lobbying from the union who drafted that CBA) impose all of its terms on employees in certain industries and there would be no NLRA issue.  Indeed, that is essentially what the City has done here with respect to the portions of a typical CBA governing discharge and layoffs.  *See* Pl. Br. 12 (citing, *e.g.*, Pl. SOUF ¶¶ 20, 24; Elkouri, *supra*; Brand & Biren, *Discipline & Discharge in Arbitration* § 2 (3d ed. 2015)).  The Court should easily reject the idea (crucial to the City's argument) that imposing deadlines on parties' CBA negotiations is preempted by *Machinists* because it creates too much pressure on the employer to agree to union-friendly terms, *Golden State*, 475 U.S. at 615-16, but imposing the

## 2.    The Just Cause Laws Are Not Minimum Labor Standards.

The crucial question in this case, largely ignored by the City, is whether the Just Cause Laws' requirements qualify as minimum labor standards. *See* Pl. Br. 9-10 (citing cases defining minimum labor standards as laws that "affect union and nonunion employees equally," and do not "intrude upon," interfere with, "encourage," or "discourage the collective-bargaining process"). The Laws here are not minimum labor standards.

First, the Just Cause Laws are objectionable for more than just the fact that they are narrowly tailored to one industry (so the City's insistence that coverage of one industry alone does not defeat an employment law is irrelevant). As explained in Plaintiffs' opening brief (Pl. Br. 9-15), the narrow tailoring, *coupled with* all the other indicators of encouraging unionization and targeted invasions of the employment relationship, reveal that the substantive requirements here are *not* "minimum labor standards" but are particular procedural obligations applicable to a particular subset of one industry which the SEIU has been campaigning to unionize. Thus, they conflict with the goals and purposes of the NLRA.

The narrow targeting here is especially revealing when contrasted with the purported purposes of the Laws. Plaintiffs did not argue that the application to the restaurant industry would necessarily be underinclusive in a vacuum. Rather, Plaintiffs pointed out that the supposed justifications for the Laws do not match the Laws' scope or the legislative history. If the Laws truly were meant to cover all "essential" workers who worked through pandemic shutdowns, as Lander claimed, SOUF ¶ 84, they would include hotel, retail, grocery, healthcare, and other workers. *See Bldg. Owners & Managers Ass'n of Chi. v. City of Chi.*, No. 19-7212, 2021 WL

---

exact terms of a CBA on entire industries (what the City's argument implies that it could do at some point in the future) is permissible despite the NLRA's policy of merely "provid[ing] a framework for [good faith] negotiations" but not mandating results or encouraging the parties to come to any particular agreement, *id.* at 616-17.

168966, at *2 (N.D. Ill. Jan. 19, 2021).  The City never shows any evidence that fast-food workers are more prone to termination than members of these other industries—especially given the current fierce competition for employees in the restaurant industry.  *See* Pl. Br. 1.  And even in highlighting self-serving quotes about supposed problems in the restaurant industry, Def. Br. 3-4, the City never attempts to justify application of the laws only to Targeted Fast-Food Employers with 30 locations nationwide—other than the goal of targeting a "benefit for a bargaining unit," *Shannon*, 549 F.3d at 1133, *i.e.*, employees of national fast-food chains.  *See* Pl. Br. 10-11.[7]

Second, the City's only response to Plaintiffs' argument (Pl. Br. 11-13) that the Just Cause Laws are just the sort of "targeted invasion of the bargaining process" that is contrary to the goals of the NLRA and thus preempted, *Concerned Home Care Providers*, 783 F.3d at 86 n.8 (quoting *Shannon*, 549 F.3d at 1134), is to ignore wide swaths of the Laws.  In arguing that the Laws are not targeted invasions and create no pressure to bargain, the City describes the Laws as "only requir[ing] that Covered Employers (i) have a valid reason to discharge their employees, (ii) give written notice of such discharge, and (iii) implement a progressive discipline policy that will guarantee fair and respectable treatment."  Def. Br. 13.

But the Laws do *much* more.  They impose a comprehensive set of processes and procedures governing the entire disciplinary relationship between Targeted Fast-Food Employers and their employees.  In addition to (i)-(iii) above, the Laws also: (iv) create new methods of dispute resolution, such as mandatory arbitration, (v) change the burden of proof for post-discharge disputes so that employers must prove just cause, (vi) forbid layoffs for *any reason* other than

---

[7] In response (at 12), the City cites *Rest. Law Ctr. v. City of N.Y.*, 360 F. Supp. 3d at 239-40, apparently arguing that this Court has upheld its previous attempts to narrowly target the fast-food industry in other ways.  But the City deceptively omits that that holding was *vacated* by the Second Circuit after the Restaurant Law Center voluntarily dismissed its appeal because the City chose to allow the deductions law at issue to expire during the pendency of that appeal, rather than suffer legal defeat of one of the City's efforts to unionize through legislation.  *See id.*, Case No. 1:17-cv-09128-PGG, Dkt. 106 (S.D.N.Y. June 3, 2020) (mandate from Second Circuit vacating opinion).

already experienced economic loss, (vii) require laying off workers based on seniority, regardless of skill or other factors, (viii) set permissible length for probationary periods, (ix) restrict disciplinary look-back periods to one year, (x) require additional training on job duties and progressive discipline policies, (xi) require pay at termination (for the last-minute "schedule change"), (xii) define seniority (including what does or doesn't "break" seniority), (xiii) require recalls of previous employees, and (xiv) define a reduction of hours by 15% or more as a discharge requiring the exact same reasons and procedures as terminations. *See* Pl. SOUF ¶¶ 39-68.

The City knows the Just Cause Laws do all these things; indeed, the DCWP created a FAQ document with over 16 pages laying out intricate requirements regarding these discharges, progressive discipline, and layoff procedures. Pl. SOUF ¶ 7 (Battaglia Decl. Ex. 5).[8] The City's attempt to minimize the Laws' impact should be seen for what it is: a tacit concession that the Laws go too far and represent a targeted invasion of the employment relationship and are thus preempted. The City defends an imagined "wrongful discharge law" that is nothing like the comprehensive and invasive Laws the City Council actually adopted.

Despite citing *Concerned Home Care Providers* multiple times, the City ignores that the minimum-wage law in that case only survived because it was *not* an "invasive and detailed" interference with the collective-bargaining process—unlike the laws in *Bragdon* and *Shannon*. The Second Circuit explicitly distinguished those two cases:

> The ordinance in *Bragdon* not only prescribed a particular level of total compensation, but also dictated "the division of the total package that is paid in hourly wages directly to the worker and the amount paid by the employer in health, pension, and welfare benefits for the worker"—a "much more invasive and detailed" interference with the collective-bargaining process than the Wage Parity

---

[8] Indeed, Defendants elsewhere admit that the laws do much more than the three things they claim in their preemption argument section. *See, e.g.*, Def. SOUF ¶¶ 57-66 (admitting the Laws shift the burden of proof to justify discharges and layoffs to employers, limit the evidence employers can rely on in adjudications, require layoffs in reverse order of seniority and recalls in order of seniority, imposes mandatory arbitration, and requires new policies, training, consistent application, "fair and objective" investigations, among other things).

> Law's minimum total compensation requirement. 64 F.3d at 502. . . . As for *Shannon*, the law at issue in that decision "establish[ed] terms of employment that would be very difficult for any union to bargain for," including detailed break requirements and *changes to the burden of proof* and to damages calculations in retaliation lawsuits. 549 F.3d at 1134. Such provisions represent a *substantially more targeted invasion of the bargaining process* than the Wage Parity Law's minimum compensation requirement. Moreover, by switching the burden of proof in retaliation cases, the ordinance in *Shannon* . . . went beyond prescribing minimum labor standards and arguably interfered with the collective-bargaining process. *See Metro. Life*, 471 U.S. at 753[].

*Concerned Home Care Providers*, 783 F.3d at 87 n.8 (emphases added).

The City cannot—and does not—deny that the Just Cause Laws invade the bargaining process at least as much as the laws *Concerned Home Care Providers* recognized were preempted. The Just Cause Laws establish detailed training, discipline, and recording requirements; shift the burden of proof from employee to employer to justify any termination or layoff; and impose a host of other requirements, like seniority, recall requirements, and others—unlike a minimum-wage law or any law upheld under *Machinists* cited in the City's brief.  Nor do Defendants dispute that it would be "very difficult" for any union to negotiate the Just Case Laws' terms without any quid pro quo concessions to the employer.  *Id.*  Thus, these Laws are an invasive, detailed scheme meant to impose terms of typical CBAs on certain employers—in conflict with the NLRA's legislative goals and attendant employer and employee rights—much more like the laws the Second Circuit held were "substantially more targeted invasion of the bargaining process" in *Shannon* than like the simple wage parity law upheld in *Concerned Home Care Providers*, 783 F.3d at 87 n.8.

And they do all of this with the express purpose of providing "part of what a union provides"—just cause requirements with intricate progressive discipline policies that are "the keystone of the collective bargaining agreement."  Pl. SOUF ¶¶ 20, 24.  For all its protests,[9] the

---

[9] In an attempt to avoid the clear legislative history indicating (i) the purpose of the law was to provide a specific bargaining unit the central components of typical CBAs and (ii) the SEIU both lobbied for *and co-drafted* the Just Cause Laws as part of their fast-food campaign efforts, the City not only argues that legislative history is inadmissible,

City's steadfast refusal to acknowledge relevant legislative history only confirms SEIU's key involvement in creating strategy for and drafting the Laws to encourage and impose unionization on fast-food workers through legislation rather than the methods the NLRA requires.

Third, the City does not provide any reason to doubt that these requirements put pressure on employers to favor unionization or collective bargaining. Def. Br. 13. If a Targeted Fast-Food Employer does not collectively bargain, it must abide by all these onerous requirements with *no* quid pro quo or concessions. The City *completely ignores* the fact (discussed at Pl. Br. 13-14) that where a CBA provides for dispute-resolution by arbitration, there is a judicially recognized and enforced quid pro quo that the union may not strike regarding an arbitrable dispute. *See Boys Markets, Inc. v. Retail Clerks Union, Local 770*, 398 U.S. 235, 248 (1970). An employer who has agreed via collective bargaining to terms similar to those of the Just Cause Laws (including the arbitration provision) as part of a CBA is thus in a better situation than an employer merely subject to the Just Cause Laws (who does not enjoy the same protection against strikes).

The City acknowledges that laws that impose more onerous requirements on employers not covered by CBAs vis-à-vis employers who are covered by CBAs are at the heart of *Machinists*

---

Def. Br. 10 n.4; Plaintiffs' Reply to Defendants' Responses and Objections to Plaintiffs' Local 56.1 Statement at 7-8, but also argues that legislative history does not matter for the preemption inquiry, Def. Br. 10. That assertion ignores the Second Circuit's cases making clear that legislative history should be consulted when evaluating preemption questions. *See Entergy Nuclear Vermont Yankee, LLC v. Shumlin*, 733 F.3d 393, 419 (2d Cir. 2013) ("[L]egislative history is an important source of determining whether a particular statute was motivated by an impermissible motive in the preemption context[.]"); *Loyal Tire & Auto Center, Inc. v. Town of Woodbury*, 445 F.3d 136, 146 (2d Cir. 2006); *Scott v. City of New York*, 592 F. Supp. 2d 386, 398 (S.D.N.Y. 2008) (statements from "key legislative drafters and sponsors" are valued over statements from others in the hierarchy of legislative history).

Moreover, Defendants themselves rely on out-of-context snippets of the Laws' history, Def. Br. 3-4, including relying on outdated reports and data, Def. SOUF ¶¶ 12-13 (relying on 2015 Fast Food Wage Report, which cited 2007 data), and make (incorrect) pronouncements that "nothing" in the Laws' "text or in the legislative record" indicates that the City "passed the Laws to interference in the collective bargaining process." Def. Br. 10. Of course, that ignores the portions of the legislative record indicating the SEIU helped conceive of and draft the law as part of their fast-food campaign effort, Pl. SOUF ¶¶ 8-22, and that the Laws' author intended to mirror key features of a unionized workforce, *id.* ¶¶ 20, 23-24; *id.* ¶ 28 (Lander indicating part of the goal of the Laws was to give employees the "*courage to organize* together with other workers") (emphasis added). This history only supports the conclusion—clear from the text of the Laws themselves—that they interfere in the collective-bargaining process and are preempted.

preemption.  *See* Def. Br. 12 (citing *Metro. Life*, 471 U.S. at 755).  Such laws also inherently create pressure to unionize or "encourage" collective bargaining, *id.* (citing *Metro. Life*, 471 U.S. at 755), given that the employer will be in a better situation (here, by achieving no-strike and other concessions) if they agree to the same terms via a CBA.

Nor does the City dispute that both Lander and the SEIU explained the purpose of the Laws was to create this pressure: they are meant to further SEIU's "strategy for organizing fast food workers," Pl. SOUF ¶ 38 (Battaglia Decl. Ex. 10), and encourage fast-food employees to "organize together with other workers, *id.* ¶ 28.  The City's failure to grapple with the actual history and purpose of the Just Cause Laws—and the Laws' actual drafter—speaks volumes and confirms that the City has no answer on preemption.  The Just Cause Laws plainly are "designed to encourage" collective bargaining.  *Concerned Home Care Providers*, 783 F.3d at 85 (such laws preempted).

For all these reasons, the Laws are not minimum labor standards and their substantive requirements interfere in the collective bargaining process.

### 3. The Just Cause Laws Directly Affect Labor Dispute Resolution.

Even under the City's cramped view of *Machinists* as preempting *only* laws that directly affect "economic weapons" or tools for "labor dispute resolution," *id.* at 9, the Just Cause Laws are still preempted because they *do* go to the heart of labor dispute resolution.

In addition to impermissibly changing the balance of power for dispute resolution by removing the no-strike agreement that employers receive in exchange for arbitration agreements (as discussed above), the Just Cause Laws remove another self-help measure from employers: lockouts, a tool that the City identifies as untouchable under *Machinists*' protection of the mechanics of bargaining.  *See* Def. Br. 9 (acknowledging that *Machinists* forbids altering Congress's bargaining framework, including the rights of employers and employees to conduct "lockouts" and "strikes," respectively).  This is fatal to the Laws.

A lockout is a complete reduction in offered hours—for all employees in a bargaining unit—typically intended to pressure the union to agree to the employer's bargaining demands and is a valid economic weapon to wield in certain circumstances. *See, e.g.*, *Am. Ship Bldg.*, 380 U.S. at 306-10.  But if an employer decided to lockout employees for a valid reason under Supreme Court and NLRB precedent, *see id.*; *In Harter Equipment, Inc.*, 280 NLRB No. 71 (1986); *Golden State*, 475 U.S. at 615 (citing Supreme Court cases permitting lockouts and replacement workers as negotiating tactics), it would violate the Just Cause Laws since they restrict "discharges" including all reductions of hours more than 15%.  Pl. SOUF ¶ 7 (Battaglia Decl. Ex. 5 at 22) ("Reductions in hours are treated the same way as terminations . . . .").  The Just Cause Laws necessarily restrict a Targeted Fast-Food Employer from engaging in a lockout.

*Machinists* itself recognized "a lockout" as an economic weapon that must remain available to employers.  427 U.S. at 152-53.  Because the City has "impos[ed] additional restrictions on economic weapons of self-help, such as . . . lockouts," *Golden State*, 475 U.S. at 614-15, the Laws are preempted.  *See Hotel Emps. & Rest. Emps. Union, Local 57 v. Sage Hosp. Res., LLC*, 390 F.3d 206, 212 (3d Cir. 2004) (Under *Machinists*, "states are prohibited from imposing additional restrictions on economic weapons of self-help, such as strikes or lockouts[.]"); *Rondout Elec., Inc. v. NYS Dep't of Labor*, 335 F.3d 162, 167 (2d Cir. 2003) (same); *Cannon v. Edgar*, 33 F.3d 880, 885 (7th Cir. 1994) (same); *see also Brown*, 554 U.S. at 68 (laws are preempted that upset the balance of power for resolving "labor disputes").

### 4.    The City Cites No Cases Upholding Any Law Similar to the Just Cause Laws Against a *Machinists* Preemption Challenge.

The City also asks the Court to "take notice" of a handful of cases that supposedly "upheld laws that broadly regulate hiring and firing."  Def. Br. 13 (citing cases).  This vague description is telling: none of these cases upheld a law remotely similar to the Just Cause Laws.

As an initial matter, *St. Thomas–St. John Hotel & Tourism Ass'n, Inc. v. Gov't of U.S. Virgin Islands*, 218 F.3d 232, 244 (3d Cir. 2000) is the only case that Defendants even allege upheld a "similar" law, Def. Br. 13, but the Virgin Islands law is not similar to the Laws here. *St. Thomas* involved a simple wrongful discharge statute, which enumerated nine "broad" reasons why employees may be terminated—and applied those reasons to *all* employees in the territory. 218 F.3d at 244 (describing list of reasons for firing as a "comprehensive list, covering all or almost all legitimate reasons for discharge"). The differences between the Just Cause laws and the Virgin Islands law abound: the latter did not require progressive discipline or the creation of any written discipline policy; did not allow second-guessing of employers' investigation process; did not cover reductions of hours; did not require layoffs in order of seniority; did not require recalling laid off employees if business picks up; did not provide for mandatory arbitration at the employee's choice; does not target a particular industry; and critically, did not shift the burden of proof regarding the discharge onto the employer. *See id.* at 235-36; V.I. Code Ann. tit. 24, §§ 76-78. Even if the Third Circuit were correct in its holding that the law was not preempted by *Machinists*, its holding says nothing about whether the Just Cause Laws are preempted.

The City's other cases are even farther afield. *Peabody Galion v. Dollar*, 666 F.2d 1309 (10th Cir. 1981) dealt simply with a law that forbids "discharging workers because they have filed [workmen's compensation] claims." *Id.* at 1316. Again, this law is easily distinguishable from the Laws here. The *Peabody* law "does not affect employers' rights to discharge persons for non-retaliatory reasons" at all. *Id.* at 1317. Many states have statutory or common-law actions for "retaliatory discharges," *id.* at 1318, but that says nothing about whether the Just Cause Laws are preempted. Indeed, New York already has anti-discrimination and anti-retaliation laws (true minimum labor standards), N.Y. Exec. Law § 290; N.Y. Lab. Law § 215, that are like the law in

*Peabody* and nothing like the Just Cause Laws here (which are not minimum labor standards).

The City's reliance on *R.I. Hospitality Ass'n*, 667 F.3d 17; *Alcantara v. Allied Props., LLC*, 334 F. Supp. 2d 336, 339 (E.D.N.Y. 2004); and *Cal. Grocers Ass'n v. City of L.A.*, 52 Cal. 4th 177 (2011), is similarly misplaced.  All three cases dealt with a rule that when a new employer assumes operations from a previous employer, new ownership must wait 90 days before firing the old employees and replacing them with new employees (with exceptions, including good cause). These successorship retention rules do not regulate the new employer's operations *in any way* after the three-month period, and in the case of *R.I. Hospitality*, actually allowed the new employer to downsize (*i.e.*, conduct layoffs) even within the first three months.  667 F.3d at 24.  And even for the covered period, the laws impose *none* of the Just Cause Laws' procedural rules—like progressive discipline, mandatory arbitration, shifting burdens of proof, etc.  The reasoning of these cases dealt with the "successorship doctrine," *id.* at 28, which (whether or not those cases were decided correctly) is inapplicable to this case.

Lastly, in distinguishing *Bassette v. Stone Container Corp.*, No. 89-33, 1992 WL 613289 (D. Mont. Oct. 9, 1992), the City never disputes *Bassette*'s reasoning that requiring a certain "job security standard and provid[ing] procedures and remedies for wrongful discharge" for employers in the midst of collective bargaining would "trivialize the very freedom of contract that is a fundamental policy of the NLRA." *Id.* at *3.  The City also ignores that "[i]ssues of hiring and firing are often central to CBA negotiations and the NLRA, as interpreted in *Machinists*, intended to allow the parties to resolve these matters without the unsettling effect of state regulation." *Barnes v. Stone Container Corp.*, 942 F.2d 689, 693 (9th Cir. 1991).

The City's inability to identify a single case upholding a law even remotely similar to the Just Cause Laws against a *Machinists* preemption challenge only confirms what Plaintiffs already

17

demonstrated—the Laws here run afoul of the NLRA and should be declared preempted.

      **C.**      **The Just Cause Laws Violate the Dormant Commerce Clause.**

The City's response confirms that the Just Cause Laws violate the dormant Commerce Clause by discriminating against interstate commerce.

      **1.**      **The Burdens of the Just Cause Laws Fall Exclusively on Entities Engaged in Interstate Commerce.**

The City does not deny the crucial fact underlying Plaintiffs' dormant Commerce Clause arguments: the Just Cause Laws and their extraordinary regulatory burdens fall entirely on entities engaged in interstate commerce, either (1) interstate restaurant chains doing business in New York City or (2) franchisees of interstate restaurant chains. The City does not identify any intrastate restaurant (or intrastate franchisee) that is subject to the Just Cause Laws. Defendants' Response to Plaintiffs' SOUF, Dkt. 44, ¶ 77. Indeed, the City admits that it does not have any "knowledge," *id.*, of *any* "Covered Employers with only in-state establishments," Def. Br. 18. No entity with only in-state establishments or in-state franchisor chain is burdened. And it is no answer for the City to point out that a hypothetical, intrastate 30-location restaurant chain would also be subject to the Laws. *Id.* Plaintiffs acknowledge that the criteria are *facially* neutral. Pl. Br. 15-16.

This sort of discrimination against interstate restaurant chains and franchisees of interstate restaurant chains discriminates against interstate commerce. Consider, for example, the Dunkin' franchisees referenced by the City (at 18). These franchisees are subject to the Just Cause Laws only because they engage in interstate commerce with Dunkin', a national brand. Had these franchisees instead opened independent restaurants, they would not be subject to the Just Cause Laws. Similarly, if they had opened franchises of a local, intrastate restaurant (for example, Dough Donuts), the laws would not apply to them. It is the fact that these individuals have done business with an interstate franchisor—and only that fact—that subjects these individuals and their

restaurants to the Just Cause Laws.

There is no serious question that the example above discriminates against interstate commerce. A State could not, for example, impose a special tax on milk produced out-of-state. Imposing a special tax on local restaurants that serve milk produced out-of-state would impose an indistinguishable burden on interstate commerce.

The dormant Commerce Clause would be a nullity if States could discriminate against interstate commerce merely by employing facially neutral criteria that captured interstate entities but would also apply to a hypothetical (albeit nonexistent) in-state entity. This is why it prohibits both laws that facially discriminate against interstate commerce as well as those that have the "practical effect" of doing so. *Maine v. Taylor*, 477 U.S. 131, 138 (1986). Here, the City does not deny that the 30-location requirement has the same effect as an express exemption for intrastate restaurants. The City's principal authority—*Nat'l Rest. Ass'n v. Comm'r of Labor*, 141 A.D.3d 185 (N.Y. App. Div. 3d Dep't 2016)—says nothing about whether the law at issue in that case was discriminatory in effect. The case considered whether the law was "facially non-discriminatory" and then evaluated it under the *Pike* balancing test, which should not apply here. *Id.* at 194.[10]

For these reasons, the Eleventh Circuit readily concluded that an ordinance prohibiting "formula restaurants" had "the practical effect of discriminating against interstate commerce." *Cachia v. Islamorada*, 542 F.3d 839, 843 (11th Cir. 2008). Like the Just Cause Laws, the ordinance at issue "d[id] not facially discriminate between in-state and out-of-state interests" but it "[wa]s not evenhanded in effect, and disproportionately target[ed] restaurants operating in

---

[10] The Laws would fail even under the *Pike* balancing test. The City offers no justification for applying the Just Cause Laws only to interstate restaurants and franchisees. Because the City does not deny that any local interest could be promoted equally as well—or even better—without burdening interstate commerce, no burden can be tolerated. *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970) ("[T]he extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities.").

interstate commerce."  *Id.*  The City correctly concedes that the only difference between *Cachia* and this case is that *Cachia* involved a complete prohibition, whereas the Just Cause Laws merely impose onerous obligations.  Def. Br. 19.  But in both cases, the practical effect of the ordinance is to discriminate against interstate commerce by targeting "formula restaurants" (in *Cachia*) and interstate restaurant and franchisees (in this case).

Indeed, the Just Cause Laws are more discriminatory in their effect than the law at issue in *Cachia*, which disproportionately affected interstate restaurants and franchises but (apparently) applied to some intrastate restaurants and franchises.  *See* 542 F.3d at 843; *see also C & A Carbone, Inc. v. Town of Clarkstown, N.Y.*, 511 U.S. 383, 391 (1994) ("The ordinance is no less discriminatory because in-state or in-town processors are also covered by the prohibition.").  Here, the 30-location requirement ensures that the Just Cause Laws do not, in practice, apply to any intrastate restaurants or franchises.  The same conclusion from *Cachia* should apply.

2.     **The City Offers No Justification (Other than Protectionism) for the Laws' Under-Inclusiveness and Fails to Demonstrate that Their Purpose Could Not Be Served by Nondiscriminatory Means.**

Because the statute has the practical effect of discriminating against interstate commerce, the City bears the burden "to demonstrate both that the statute serves a legitimate local purpose, and that this purpose could not be served as well by available nondiscriminatory means."  *Maine*, 477 U.S. at 138 (quotation omitted).  Any "proffered justification for any local discrimination against interstate commerce must be subjected to 'the strictest scrutiny.'"  *Id.* at 144 (citation omitted).  Even if the Just Cause laws served a legitimate local purpose (as opposed to encouraging workers and employers towards unionization through a means incompatible with federal labor law), the City fails to carry—or attempt to carry—its burden to prove their purpose could not be served by nondiscriminatory means: *i.e.*, without targeting entities engaged in interstate commerce. Pl. SOUF ¶ 8.

Not only does the City offer no evidence that no non-discriminatory means would have served its purpose, *cf. Maine*, 477 U.S. at 144 (noting that this is a factual question), but the City does not even offer any argument supporting the interstate restriction.  All of the justification offered by the City—both in its motion and in the legislative history—concern "fast food workers" and "fast food restaurants" generally.  *See, e.g.*, Def. Br. 1 ("The fast food industry employs about 67,000 workers in New York City.").  The City's evidence demonstrates no reason to target interstate restaurants.  Likewise, the legislative history reveals the true justification for this distinction was local protectionism.  Lander expressed "deep sympathy for our neighborhood small businesses" that "bring so much life to our neighborhoods" and noted that the Laws apply to "only fast-food chains" and "not your neighborhood restaurant."  Def. SOUF ¶ 37.[11]

Indeed, in its cross-motion and response, the City fails to distinguish between those fast-food workers covered by the Just Cause Laws and those fast-food workers not covered.  It discusses the "3,000 fast food establishments" in New York City, the "fast food workforce" and "fast food industry" generally, and "state of at-will employment in the fast food industry."  *Id.* at 3.  But none of these justifications actually supports the (narrower) Just Cause Laws enacted by the City, which apply only to interstate restaurants and franchisees.  The City has chosen to employ "discriminatory means even though nondiscriminatory alternatives would seem likely to fulfill the [its] purported legitimate local purpose more effectively."  *Hughes v. Oklahoma*, 441 U.S. 322, 338 (1979).  Because the City fails to meet its burden to justify the discriminatory effect of the Laws, the Just Cause Laws violate the dormant Commerce Clause.

### 3.    The Just Cause Laws Impose Significant Costs on Employers.

The City purports to deny that the Just Cause Laws impose any costs or burdens on

---

[11] Moreover, this is particularly a misleading distinction when many franchise owners are small and local businesses themselves yet are burdened by the Laws simply because of their franchise relationship with interstate chains.

employers (Def. Br. 19-21), though any objective observer must admit they do exactly that. As only the most obvious example, the Laws provide an irrationally narrow definition of "bona fide economic reason," which precludes covered employers from making scheduling changes to increase their profits or avoid anticipated losses. Pl. Br. 5. Nor can the City deny that the "seniority" provisions of the law force employers to ignore their business needs and their employees' responsibilities, job titles, abilities, and skills. *Id.* This is all in addition to the necessary costs of creating, documenting, and enforcing a "progressive discipline policy" that will undoubtedly be challenged (in a proceeding in which the employer is presumed guilty) whenever an employee is terminated. Standing alone, the litigation burdens are tremendous. And that is not to mention the costs of employers being forced to continue to employ someone who has violated the employer's rules, but has not yet satisfied the progressive discipline requirement.

These costs and burdens are apparent on the face of the statute, and the legislative history is replete with evidence of the burdens these laws impose on employers. *E.g.*, Pl. SOUF ¶¶ 33-34. But, for the avoidance of doubt, Plaintiffs submitted a declaration from someone with a high degree of personal knowledge of the industry confirming the costs and burdens. Pl. SOUF ¶¶ 69, 70, 71, 72, 74, 75. There is no serious question—both on the face of the Laws and from Plaintiffs' evidence—that the Just Cause Law impose significant costs on Targeted Fast-Food Employers.

The City also halfheartedly suggests that the Just Cause Laws benefit, rather than burden, employers. Def. Br. 21. But rather than cite any evidence to this effect (it appears that no witness was willing to testify to such a belief), the City merely quotes a statement from the then-Commissioner of the DCWP (whose successor is a Defendant in this case). Def. Br. 21 (quoting Def. 56.1 ¶ 28). The testimony of actual employers regarding the bill confirms that the Laws' obligations are a burden and not a benefit. *E.g.*, Pl. SOUF ¶¶ 33-34. And if the Just Cause Laws

truly helped employers, then the City's decision to target interstate restaurants is even less rational.

This Court should thus hold that the Just Cause Laws violate the dormant Commerce Clause.  It appears that the New York City Council recognized (correctly) that the Just Cause Laws would be far too burdensome and disruptive to impose on local restaurants.  The constitutional solution to these burdens is not to enact the Laws at all, rather than to target interstate restaurants and franchisees while exempting local restaurants.

### D.    The Just Cause Laws Violate New York Law Establishing At-Will Employment.

The City's entire response to Plaintiffs' argument that the Just Cause Laws are preempted by New York's law establishing default at-will employment rests on the assumption that state common law can never preempt cities' ordinances.  But the City admits that "federal common law preempts state law," Def. Br. 22 (quoting *City of New York v. Chevron Corp.*, 993 F.3d 81, 95 (2d Cir. 2021)), and never disputes that New York courts describe New York preemption law as parallel to federal preemption law, *see* Pl. Br. 21 (citing *Mayor of New York v. Council of City of New York*, 780 N.Y.S.2d 266, 273 (N.Y. Sup. Ct. 2004)).  The City just asserts the analogy to federal preemption is "faulty" and state common law (unlike federal common law) cannot have preemptive effect.  Def. Br. 22-23.  But the City provides no support or citation for this argument, let alone an explanation why New York common law should be treated any differently than federal common law for preemption purposes—especially given New York cases stating the opposite.

Nor does the City dispute that local laws addressing the same subject matter as state laws are preempted if they "prohibit[] conduct" that state law specifically "considers acceptable." *Jancyn Mfg. Corp. v. Suffolk Cty.*, 71 N.Y.2d 91, 96-97 (1987).  As Plaintiffs showed, it is a long-settled, important rule in New York that default employment absent an agreement otherwise is at-will (not just cause).  Pl Br. 19-20.  State common law specifically considers no-cause terminations

"acceptable" absent discriminatory purpose; and New York courts hold this rule may be altered only by "the Legislature"—*i.e.*, the New York State Legislature.  *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 301-02 (1983) ("such a significant change in our law is best left to the Legislature"—leaving to state Legislature *whether* and *how* to make such a shift "in New York").

The City instead jumps straight to the question of local governments' authority.  Def. Br. 23-24.  But that is too hasty—a local government may have general authority in a certain area, but specific laws may still be preempted by contradictory state rules (like federal-state preemption).

In all events, a separate ground for striking the law is the City's lack of authority in creating it.  As Plaintiffs explained (Pl. Br. 21)—and Defendants recognize (Def. Br. 22)—New York's Constitution specifically forbids localities from passing laws "inconsistent with the provisions of . . . any general law."  N.Y. CONST., art. IX, § 2(c).  Defendants ignore that nothing in the Constitution's definition of general law excludes common law—it is all law that "in terms and in effect applies alike to all . . . villages."  *Id.*, art. IX § 3(d).  Rather than addressing this definition, Defendants note that the *legislative* delegation of power to localities defines "general law" *for its purposes* as state statutes.  Def. Br. 23 (citing MHRL §§ 2(5)-(6)).  But that statute neither limits the constitutional definition nor removes the constitutional limitation on cities' authority.

It cannot be disputed that "New York law as it now stands" grants employers the right to terminate employees at will absent an illegal discriminatory purpose, a specific contract of fixed duration, or a statewide legislative enactment.  *Horn v. N.Y. Times*, 100 N.Y.2d 85, 92 (2003); *see Colodney v. Continuum Health Partners, Inc.*, No. 03-7276, 2004 WL 829158, at *5 (S.D.N.Y. Apr. 15, 2004) (Cote, J.).  Nor can it be disputed that the New York Court of Appeals held that any abrogation of the state's at-will employment policy would be a "significant change in our law" that requires action from the state Legislature.  *Murphy*, 58 N.Y.2d at 301-02.  What the City has

done here is much more than "create liability where none" previously existed (Def. Br. 24)—it has reversed a more-than-hundred-year-old employment scheme, which the New York Court of Appeals has long-stressed should be changed only by "the Legislature because stability and predictability in contractual affairs" in employment relationships is "highly desirable." *Sabetay v. Sterling Drug*, 69 N.Y.2d 329, 336 (1987) (citation omitted) (references to state laws in the next sentence make clear that *Sabetay* is referring to the *State* "Legislature").[12]

Lastly, the City cites a few cases supposedly standing for the proposition that cities may derogate common law to create liability in certain circumstances—but these cases neither involve such a well-settled and important New York law as at-will employment nor remove a long-established right and settled expectations from ongoing contractual relationships.  Two of the cases involve classic local questions of who is liable if someone slips and falls on a public sidewalk.  Both *Vucetovic v. Epsom Downs, Inc.*, 10 N.Y.3d 517 (2008) and *Boorstein v. 1261 48th St. Condo.*, 946 N.Y.S.2d 200 (2012), accept that New York City can shift personal injury tort liability for slips and falls on sidewalks from itself to the landowner directly abutting that portion of the sidewalk, although both cases actually held the defendant was *not* liable for particular slip and fall at issue.  *See Vucetovic*, 10 N.Y.3d at 521-22 (holding that City's attempt to shift liability from itself to landowners for accidents in city-owned tree wells failed); *Boorstein*, 946 N.Y.S.2d 200 (condominium had no liability for slip and fall).  New York City shifting liability away from itself to landowners is an inherently local concern.  And the City never cites any case law indicating that City rather than landowner liability was an important policy of the State—unlike at-will employment, which *is* such an important policy.  *See* Pl. Br. 19-20 (citing cases).

---

[12] The City also includes a footnote claiming (with no citation or support) that at-will employment rules apply only to terminations" and not to "layoffs" or "suspensions" or "discharges."  Def. Br. 22 n.10.  That claim is hard to take seriously.  If an employer can completely terminate an employee for any nondiscriminatory reason, it certainly may "layoff," "constructive[ly] discharge," or reduce hours for any nondiscriminatory reason.

In short, the City's cases do not support its argument.  Default tort liability for land-related injuries is nothing like the State's strong presumption in favor of at-will employment.  Nor have Defendants identified any successful effort to abrogate baseline rules governing employment contracts in this State in contravention of New York's at-will employment law.[13]

Thus, this Court should find that New York state law preempts the City's Just Cause Laws.

### E.    The Just Cause Laws' Mandatory Arbitration Provision Is Illegal.

Although the City argues (at 14-15), that the compulsory, non-consensual arbitration provisions of the Just Cause laws are consistent with the Federal Arbitration Act, it fails to address their inconsistency with federal law labor.  *See* Pl. Br. 22-23 (arguing that under federal labor law, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit," *AT & T Techs., Inc. v. Comm'cns Workers of Am.*, 475 U.S. 643, 648 (1986)).  The Supreme Court has held that the NLRA does not permit a State to compel arbitration of labor disputes.  *Amalgamated Ass'n of St. Elec. Ry. & Motor Coach Employees v. Wisconsin Employment Relations Bd.*, 340 U.S. 383, 385 (1951); *see also Mount St. Mary's Hosp. of Niagara Falls v. Catherwood*, 260 N.E.2d 508, 511 (N.Y. 1970) (noting use of "compulsory arbitration statutes" has "been severely limited" since *Amalgamated Association*).

As detailed above, the issues decided by an arbitrator under the Just Cause Laws go to the heart of labor arbitration.  The concept of "just cause" has been developed by arbitrators pursuant to collective bargaining agreements.  *See* Pl. Br. 12.  And arbitrators will be called upon to judge the adequacy and reasonableness of employers' disciplinary rules and procedures, which are

---

[13] The City's other citation to *Katt v. City of New York*, 151 F. Supp. 2d 313 (S.D.N.Y. 2001) does not do so.  That case held simply that a City law dealing with employment discrimination, which allowed employees to sue the City, did not provide for punitive damages against the City.  *Id.* at 337-41.  The existence of a law curtailing discrimination in the workplace is unsurprising, as that exception is baked into New York State's at-will employment law—which, absent an express contract, allows termination for "any *nondiscriminatory* reason." *Carter v. Rosenberg & Estis, P.C.*, No. 95-10439, 1997 WL 299398, at *2 (S.D.N.Y. June 5, 1997) (Cote, J.) (emphasis added); *see also Horn*, 100 N.Y.2d at 92.

classic subjects for collective bargaining and labor arbitration.  In this context, federal labor laws require that arbitration be a matter of consent and not coercion, a point unaddressed by the City.

Nor does the coerced arbitration mechanism comply with New York law.  First, it violates defendants' rights to a jury trial.  Although the claim under the Just Cause Laws is new, it has a common law *analog* in a breach of contract action.  The Just Cause Laws, in effect, impose additional contract terms on agreements between employers and employees, and "[a] cause of action seeking money damages for breach of contract is quintessentially an action at law." *Hudson View II Associates v. Gooden*, 222 A.D.2d 163, 168 (N.Y. App. Div. 1st Dep't 1996).  There is no question that if an employer and employee had agreed to these terms, any suit to recover damages for their breach would be an action at law, with a corresponding right to a jury trial.  No different result should occur because these terms are imposed by the City rather than agreed to by the parties.  And as the City appears to acknowledge, the arbitrator may award both legal relief (*i.e.*, compensatory damages) and equitable relief.[14]  Def. Br. 25.  Although a *plaintiff* waives the right to a jury trial by seeking both legal and equitable relief, "defendants are not deprived of their right to a jury trial of the legal claims."  *KNET, Inc. v. Ruocco*, 145 A.D.3d 989, 992 (N.Y. App. Div. 2d Dep't 2016).  (The City ignores the difference between a plaintiff's and defendant's right to a jury.  Def. Br. 27 n.13.)

The City's reliance (at 27) on *Murphy v. Am. Home Products Corp.*, 136 A.D.2d 229 (N.Y. App. Div. 1st Dep't 1988), is misplaced.  *Murphy* involved a discrimination claim, not a claim based on implied contractual terms (such as the progressive discipline requires) like those imposed

---

[14] To the extent that the City suggests that an arbitrator has the discretion not to award compensatory damages to which a plaintiff proves that the plaintiff is entitled, Def. Br. 26 (arguing that legal relief is "at the discretion of the arbitrator"), the City only proves Plaintiffs' point about the lawlessness of the scheme.  The City is now urging that a private individual can award relief entirely based on "discretion" and without being bound by legal standards.  Such a scheme would violate Due Process, in addition to the defects described above.

by the Just Cause Laws.  And the case held only that "an age discrimination suit statutorily created by Executive Law § 297(9) which seeks monetary relief only is a legal wrong triable by a jury." *Id.* at 235.  There was no challenge to the administrative proceeding, no compulsory arbitration mechanism, and no discussion of the right to a jury trial outside that context.

The City's half-hearted request that this Court sever compensatory damages—a form of relief awarded by the City Council—should also be denied.  *See* Def. Br. 28 n.14 (citing, without explanation, the Supreme Court of the United States rather than state rules).  The impermissible portion of the Just Cause Laws is not the compensatory damages—it is the attempt to empower private individuals and an administrative agency to perform adjudication properly performed only by a jury.  At a minimum, these forms of adjudication must be struck down, and given the link between these fora and the statute itself, the Just Cause Laws as a whole should be struck down. The City identifies nothing indicating that "the Legislature, if partial invalidity had been foreseen, would have wished the statute to be enforced with the invalid part exscinded" rather than "rejected altogether."  *People ex rel. Alpha Portland Cement Co. v. Knapp*, 129 N.E. 202, 207 (N.Y. 1920).

With respect to the jurisdiction of the New York Supreme Court, the City misreads *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State*, 75 N.Y.2d 175 (1990), as focused entirely on whether the statute involves a new cause of action.  Def. Br. 29.  But that case highlights the differences between the state Legislature's authority and cities' authority which defeat the City's action here.

Critically, the City ignores the portion of the opinion that discusses the power of the New York *State* Legislature "to alter and regulate the jurisdiction and proceedings in law and in equity." *Motor Vehicle Mfrs.*, 75 N.Y.2d at 184 (discussing N.Y. CONST, art. VI, § 30).  If the City were correct—and the creation of a new cause of action was the entire basis of the holding—then the Legislature's power over the Supreme Court (and this portion of the opinion) would have been

irrelevant.  The decision explains that although the "Supreme Court has lost no jurisdiction," the "type of adjudication differs."  *Id.*  This result was permissible for the reasons explained in the previous paragraph of the opinion: the power of the Legislature to alter and regulate proceedings of the Supreme Court.  *Id.*  The New York City Council has no similar power, and unlike the state Legislature, cannot change the responsibility of the Supreme Court from adjudicating to reviewing the result of compulsory arbitration under CPLR article 75.  The state Legislature may be free to "award [a] litigan[t] the option of choosing arbitration or judicial proceedings in the first instance, *id.*, but New York City is not.[15]

Because the City cannot abrogate the jury right, Supreme Court jurisdiction, or federal arbitration protection, the Just Cause Laws' compulsory arbitration provisions are impermissible.

### F.    This Court Should Exercise Supplemental Jurisdiction Over the State Law Claims.

Defendants ask this Court not to exercise supplemental jurisdiction over Plaintiffs' state constitutional and preemption claims, but they provide merely one sentence of argument in support of that request.  Def. Br. 21.  It should be denied.

Defendants do not dispute that this Court has supplemental jurisdiction over all claims in this case because the state claims clearly relate to claims within this court's original jurisdiction. 28 U.S.C. § 1367(a).  Instead, Defendants hope to invoke Section 1367(c), but neither category that Defendants mention applies here.  And even if Section 1367(c) were implicated, that statute merely states that district courts "may decline to exercise supplemental jurisdiction," not that they must.  Judicial efficiency and the relatedness of the claims favor this Court resolving all claims.

---

[15] The New York City Commission on Human Rights, which adjudicates some discrimination claims, is empowered by state law, not local law.  *See* N.Y. Gen. Mun. Law § 239-s ("[W]ith respect to [its] powers, the jurisdiction of the New York city commission on human rights in relation to matters within the city of New York shall be deemed to be concurrent with the jurisdiction of the New York state division of human rights.").

First, Defendants assert that the state law issues here are "novel and complex."  Def. Br. 21.  Not so.  The parties agree on controlling standards; they just disagree on how New York state law applies to this case.  For example, the parties agree that the state jury right largely depends on whether the relief is legal or equitable—hardly a novel question.  Disagreement over how to read cases and governing law is not novelty; if it were, Section 1367(c) would always be implicated.

Second, Defendants' invocation of Section 1367(c)(3) should fail.  Plaintiffs' federal claims should *succeed* for the above reasons, so there is no occasion to discuss the circumstance of "all" their federal claims being "dismissed."  Moreover, given the summary judgment status here, the Court would not dismiss Plaintiff's claims even if it agrees with Defendants' arguments on the merits.  If the Court agrees with Defendants' arguments on summary judgment, it will have *adjudicated* those federal claims—rendering a take-nothing judgment in favor of Defendants— and there is no reason not to simultaneously adjudicate the related state claims.[16]

## III.   CONCLUSION

For each of these independent reasons, and those discussed in Plaintiffs' motion for summary judgment, the Just Cause Laws violate federal or state law.  Plaintiffs respectfully request that the Court grant their motion for summary judgment and deny Defendants' cross-motion, declare the laws invalid, and enjoin their enforcement.

---

[16] Defendants' invocation of "judicial economy, convenience, fairness, and comity" (at 21) is relevant *only if* this Court dismisses all federal claims. *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006).  Because the state law challenges to the arbitration requirement are related to the federal challenge to that requirement and the state-law preemption claim is related to the NLRA preemption argument, judicial economy and convenience clearly weigh in favor of deciding them together in any event.

Dated: August 24, 2021

Respectfully submitted,

/s/ Leni D. Battaglia

Leni D. Battaglia
Samuel S. Shaulson
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, NY  10178
T: 212-309-7177
leni.battaglia@morganlewis.com
sam.shaulson@morganlewis.com

William R. Peterson
*Admitted pro hac vice*
Morgan, Lewis & Bockius LLP
1000 Louisiana Street, Suite 4000
Houston, TX  77002
T: 713-890-5188
william.peterson@morganlewis.com

James D. Nelson
*Admitted pro hac vice*
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW
Washington, DC  20004
T: 202-739-5411
james.nelson@morganlewis.com

Angelo I. Amador
*Admitted pro hac vice*
Restaurant Law Center
2055 L Street, NW
Seventh Floor
Washington, DC  20036
T: 202-492-5037
aamador@restaurant.org

## <u>CERTIFICATE OF ELECTRONIC FILING AND SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was filed electronically and served on all counsel of record on August 24, 2021 via the Court's ECF/CM System.

*/s/ Leni D. Battaglia*
Leni D. Battaglia
